FRELINGHUYSEN, Secretary of State, *v.* KEY.

LA ABRA SILVER MINING COMPANY *v.* FRELING-HUYSEN, Secretary of State.

IN ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued December 3d, 4th, 1883.—Decided January 7th, 1884.

*Awards under Claims Convention with Mexico.*

1. By the Claims Convention of July 4th, 1868, between the United States and Mexico, it was agreed that "all claims on the part of corporations, companies or private individuals, citizens of the United States, upon the Government of the Mexican Republic, arising from injuries to their persons or property by authorities of the Mexican Republic" should be submitted to the decision of a commission to be created under the treaty; that it should "be competent for each government to name one person to attend the commission as agent on its behalf, to present and support claims on its behalf;" and that the parties would "consider the result of the proceedings of this commission as a full, perfect and final settlement:" *Held*, That, though the awards made by the Commissioners under this

authority are on their face final and conclusive as between the United States and Mexico, they are only so until set aside by agreement between the two governments or otherwise; and that the United States may. treat with Mexico for a retrial of any case decided by the commission, and that the President may withhold from any claimant his distributive share of any sums paid by Mexico under the treaty, while negotiating with that republic for a retrial of his case.

2. When it is alleged that a decision in an international tribunal against a foreign government was obtained by the use of fraud, no technical rules of pleading as applied in municipal courts should be allowed to stand in the way of the national power to do what is right.

3. The relations between a claimant in an international tribunal and the foreign government, and between the claimant and his own government examined and considered.

4. § 1, act of June 18th, 1878, ch. 262, 20 Stat. 144, authorized and required the Secretary of State to receive all sums paid by Mexico in pursuance of that convention, and to distribute them in ratable proportions among those in whose favor awards had been made : *Held*, That this only provided for the receipt and distribution of the sums paid without such a protest or reservation on the part of Mexico as in the opinion of the President was entitled to further consideration, and that it did not set new limits on executive power.

5. § 5 of that act requested the President to investigate charges of fraud made by Mexico respecting the proof of certain claims before the commission, and pointed out some subsequent executive acts that might be done in the premises : *Held*, That this was only an expression of the desire of Congress to have the charges investigated, but did not limit or increase the executive powers in that respect under preexisting laws.

These causes originated in petitions to the Supreme Court of the District of Columbia, for mandamus upon the Secretary of State to compel him to pay to the petitioners (representing claims proved before the commission established under the Claims Convention of July 4th, 1868, with Mexico), their distributive shares of certain payments made by Mexico to the United States in accordance with the terms of that convention. The following are the facts as recited by the court, and on which the opinion is based.

On the 4th of July, 1868, a convention between the United States and the Republic of Mexico, providing for the adjustment of the claims of citizens of either country against the other, was concluded, and, on 1st of February, 1869, proclaimed by the President of the United States, by and with

the advice and consent of the Senate. By this convention
(Art. I.):

" All claims on the part of corporations, companies, or private
individuals, citizens of the United States, upon the government
of the Mexican Republic, arising from injuries to their persons or
property by authorities of the Mexican Republic, and all claims
on the part of corporations, companies, or private individuals,
citizens of the Mexican Republic, upon the government of the
United States, arising from injuries to their persons or property by
authorities of the United States, which may have been presented
to either government for its interposition with the other since
the signature of the treaty of Guadalupe Hidalgo, .... and
which yet remain unsettled, as well as any other such claims which
may be presented within," a specified time, were to "be referred
to two commissioners, one to be appointed by the President of
the United States, by and with the advice and consent of the Sen-
ate, and one by the President of the Mexican Republic."

Provision was then made for the appointment of an umpire.
Arts. II., IV., and V., are as follows :

ART. II. " The commissioners shall then conjointly proceed to
the investigation and decision of the claims which shall be pre-
sented to their notice, . . . but upon such evidence or infor-
mation only as shall be furnished by or on behalf of their respec-
tive governments. They shall be bound to receive and peruse all
written documents or statements which may be presented to them
by or on behalf of their respective governments in support of, or
in answer to any claim, and to hear, if required, one person on
each side on behalf of each government on each and every sepa-
rate claim. Should they fail to agree in opinion upon any indi-
vidual claim, they shall call to their assistance the umpire . .;
and such umpire, after having examined the evidence adduced for
and against the claim, and after having heard, if required, one
person on each side as aforesaid, and consulted with the commis-
sioners, shall decide thereupon finally and without appeal. . .
It shall be competent for each government to name one person to
attend the commissioners as agent on its behalf, to present and
support claims on its behalf and to answer claims made upon it,

and to represent it generally in all matters connected with the investigation and decision thereof. The President of the United States . . . . and the President of the Mexican Republic hereby solemnly and sincerely engage to consider the decisions of the commissioners conjointly, or of the umpire, as the case may be, as absolutely final and conclusive upon each claim decided upon by them or him respectively, and to give full effect to such decision without any objection, evasion, or delay whatsoever. . . ."

ART. IV. " When decisions shall have been made by the commissioners and the arbiter in every case which shall have been laid before them, the total amount awarded in all the cases decided in favor of the citizens of the one party shall be deducted from the total amount awarded to the citizens of the other party, and the balance, to the amount of $300,000, shall be paid at the city of Mexico or at the city of Washington, . . . within twelve months from the close of the commission, to the government in favor of whose citizens the greater amount may have been awarded, without interest. . . . The residue of the said balance shall be paid in annual instalments to an amount not exceeding $300,000 . . . in any one year until the whole shall have been paid."

ART. V. " The high contracting parties agree to consider the result of the proceedings of this commission as a full, perfect, and final settlement of every claim upon either government arising out of any transaction of a date prior to the exchange of the ratifications of the present convention ; and further engage that every such claim, whether or not the same may have been presented to the notice of, made, preferred, or laid before the said commission, shall, from and after the conclusion of the proceedings of the said commission, be considered and treated as finally settled, barred, and thenceforth inadmissible." 15 Stat. 679.

Under this convention commissioners were appointed who entered on the performance of their duties. Benjamin Weil and the La Abra Silver Mining Company, citizens of the United States, presented to their government certain claims against Mexico. These claims were referred to the commissioners, and finally resulted in an award, on the 1st of October, 1875, in favor of Weil and against Mexico for $489,810.68, and

on the 27th of December, 1875, in favor of La Abra Silver Mining Company for $683,041.32. On the adjustment of balances under the provisions of Art. IV. of the convention it was found that the awards against Mexico exceeded largely those against the United States, and the government of Mexico has promptly and in good faith met its annual payments, though it seems from the beginning to have desired a re-examination of the Weil and La Abra claims.

On the 18th of June, 1878, Congress passed an act (c. 262, 20 Stat. 144), secs. 1 and 5 of which are as follows:

SEC. 1. "That the Secretary of State be, and he is hereby authorized and required to receive any and all moneys which may be paid by the Mexican Republic under and in pursuance of the convention between the United States and the Mexican Republic for the adjustment of claims; . . . and, whenever and as often as any instalments shall have been paid by the Mexican Republic on account of said awards, to distribute the moneys so received in ratable proportions, among the corporations, companies, or private individuals respectively in whose favor awards have been made by said commissioners, or by the umpires, or to their legal representatives or assigns, except as in this act otherwise limited or provided, according to the proportion which their respective awards shall bear to the whole amount of such moneys then held by him, and to pay the same, without other charge or deduction than is hereinafter provided, to the parties respectively entitled thereto." . . .

SEC. 5. "And whereas the government of Mexico has called the attention of the government of the United States to the claims hereinafter named, with a view to a rehearing, therefore be it enacted that the President of the United [States] be, and he is hereby, requested to investigate any charges of fraud presented by the Mexican government as to the cases hereinafter named, and if he shall be of the opinion that the honor of the United States, the principles of public law or considerations of justice and equity require that the awards in the cases of Benjamin Weil and La Abra Silver Mining Company, or either of them, should be opened and the cases retried, it shall be lawful for him to withhold payment of said awards, or either of them, until such case or

cases shall be retried and decided in such manner as the govern-
ments of the United States and Mexico may agree, or until Con-
gress shall otherwise direct. And in case of such retrial and de-
cision, any moneys paid or to be paid by the Republic of Mexico
in respect of said awards respectively shall be held to abide the
event, and shall be disposed of accordingly ; and the said present
awards shall be set aside, modified, or affirmed, as may be deter-
mined on such retrial : *provided* that nothing herein shall be con-
strued as an expression of any opinion of Congress in respect to
the character of said claims, or either of them."

During the year 1879, President Hayes caused an investiga-
tion to be made of the charges of fraud presented by the Mexi-
can government, and the conclusion he reached is thus stated
in the report of Mr. Evarts, the then Secretary of State:

"I conclude, therefore, that neither the principles of public law
nor considerations of justice or equity require or permit, as be-
tween the United States and Mexico, that the awards in these
cases should be opened and the cases retried before a new inter-
national tribunal or under any new convention or negotiation
respecting the same between the United States and Mexico.

"Second. I am, however, of opinion that the matters brought
to the attention of this government on the part of Mexico do
bring into grave doubt the substantial integrity of the claim of
Benjamin Weil and the sincerity of the evidence as to the measure
of damages insisted upon and accorded in the case of the La Abra
Silver Mining Company, and that the honor of the United States
does require that these two cases should be further investigated
by the United States to ascertain whether this government has
been made the means of enforcing against a friendly power claims
of our citizens based upon or exaggerated by fraud.

"If such further investigation should remove the doubts which
have been fairly raised upon the representations of Mexico, the
honor of the United States will have been completely maintained.
If, on the other hand, the claimants shall fail in removing these
doubts, or they should be replaced by certain condemnation, the
honor of the United States will be vindicated by such measures
as may then be dictated.

"Third. The executive government is not furnished with the

means of instituting and pursuing methods of investigation which can coerce the production of evidence or compel the examination of parties and witnesses. The authority for such an investigation must proceed from Congress. I would advise, therefore, that the proofs and the conclusions you shall come to thereon, if adverse to the immediate payment on these awards of the instalments received from Mexico, be laid before Congress for the exercise of their plenary authority in the matter."

This action of the President was communicated to Congress under date of April 15th, 1880, by his forwarding a copy of the report of the Secretary of State, which concludes as follows:

" Unless Congress should now make this disposition of the matter, and furnish thereby definite instructions to the Department to reserve further payments upon these awards till the conclusion of such investigation, and to take such further order with the same thereafter as Congress might direct, it would appear to be the duty of the Executive to accept these awards as no longer open to reconsideration, and proceed in the payment of the same pro rata with all other awards under the convention."

No definitive instructions were given by Congress in respect to the matter during that session, and after the close of the session payments were made on these awards by the direction of the President the same as on the others. Another instalment was paid by the Mexican government and distributed to these claimants with the rest during President Garfield's administration. In this way five instalments were distributed. After President Arthur came into office he examined the cases further, and, " believing that said award was obtained by fraud and perjury," negotiated a treaty with Mexico providing for a rehearing. This treaty is now pending before the Senate for ratification. On the 31st of January, 1882, the sixth instalment was paid by Mexico to Mr. Frelinghuysen, the present Secretary of State. A distribution of this instalment to these claimants has been withheld by order of the President on account of the pending treaty.

These suits were brought in the Supreme Court of the Dis-

trict of Columbia to obtain writs of mandamus requiring the Secretary of State to pay to the several relators the amounts distributable to them respectively upon their disputed awards from the instalment of 1882. The relator, Key, is the assignee of part of the Weil claim. In this case the Secretary filed an answer setting up the action of President Arthur in respect to this claim and the negotiation of the new treaty. To this the relator demurred. Upon the hearing the court below sustained the demurrer and awarded a peremptory writ as prayed for.

In the case of the La Abra Company a petition substantially like that of the relator Key was demurred to by the Secretary. Upon the hearing this demurrer was sustained and the petition dismissed. In this case, therefore, the action of President Arthur does not appear affirmatively on the face of the record, but it was conceded on the argument that it might properly be considered.

The writ of error in the Key case was brought by the Secretary of State, and in the other by the La Abra Company.

*Mr. P. Phillips*, for Key.

*Mr. Samuel Shellabarger*, for the La Abra Silver Mining Company.

*Mr. Solicitor-General*, for the United States.

*Mr. Attorney-General*, for the United States.

*Mr. John Goode*, for Key, and *Mr. Frederick P. Stanton*, for La Abra Company.

*Mr. T. W. Bartley* filed a brief for the La Abra Company, and *Mr. R. B. Warden* a brief for Key.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

If we understand correctly the positions assumed by the different counsel for the relators, they are:

1. That the awards under the convention vested in the several claimants an absolute right to the amounts awarded them respectively, and that this right was property which neither

the United States alone, nor the United States and Mexico together, could take away ; and,

2. That, if this were not so, the action of President Hayes, under the 5th section of the act of 1878, was conclusive on President Arthur, and deprived him of any right he might otherwise have had to investigate the charges of fraud presented by the Mexican government, or to withhold from the relators their distributive shares of any moneys thereafter paid to the Secretary of State under the authority of the first section.

1. There is no doubt that the provisions of the convention as to the conclusiveness of the awards are as strong as language can make them. The decision of the commissioners, or the umpire, on each claim, is to be " absolutely final and conclusive " and " without appeal." The President of the United States and the President of the Mexican Republic are " to give full effect to such decisions, without any objection, evasion, or delay whatsoever," and the result of the proceedings of the commission is to be considered " a full, perfect, and final settlement of every claim upon either government arising out of transactions prior to the exchange of the ratifications of the . . . . convention." But this is to be construed as language used in a compact of two nations "for the adjustment of the claims of the citizens of either . . . against the other," entered into " to increase the friendly feeling between" republics, and " so to strengthen the system and principles of republican government on the American continent." No nation treats with a citizen of another nation except through his government. The treaty, when made, represents a compact between the governments, and each government holds the other responsible for everything done by their respective citizens under it. The citizens of the United States having claims against Mexico were not parties to this convention. They induced the United States to assume the responsibility of seeking redress for injuries they claimed to have sustained by the conduct of Mexico, and as a means of obtaining such redress the convention was entered into, by which not only claims of citizens of the United States against Mexico

were to be adjusted and paid, but those of citizens of Mexico against the United States as well. By the terms of the compact the individual claimants could not themselves submit their claims and proofs to the commission to be passed upon. Only such claims as were presented to the governments respectively could be "referred" to the commission, and the commissioners were not allowed to investigate or decide on any evidence or information except such as was furnished by or on behalf of the governments. After all the decisions were made and the business of the commission concluded, the total amount awarded to the citizens of one country was to be deducted from the amount awarded to the citizens of the other, and the balance only paid in money by the government in favor of whose citizens the smaller amount was awarded, and this payment was to be made, not to the citizens, but to their government. Thus, while the claims of the individual citizens were to be considered by the commission in determining amounts, the whole purpose of the convention was to ascertain how much was due from one government to the other on account of the demands of their respective citizens.

As between the United States and Mexico, the awards are final and conclusive until set aside by agreement between the two governments or otherwise. Mexico cannot, under the terms of the treaty, refuse to make the payments at the times agreed on if required by the United States. This she does not now seek to do. Her payments have all been made promptly as they fell due, as far as these records show. What she asks is the consent of the United States to her release from liability under the convention on account of the particular awards now in dispute, because of the alleged fraudulent character of the proof in support of the claims which the United States were induced by the claimants to furnish for the consideration of the commission.

As to the right of the United States to treat with Mexico for a retrial, we entertain no doubt. Each government, when it entered into the compact under which the awards were made, relied on the honor and good faith of the other for protection as far as possible against frauds and impositions by the indi-

vidual claimants. It was for this reason that all claims were excluded from the consideration of the commission except such as should be referred by the several governments, and no evidence in support of or against a claim was to be submitted except through or by the governments. The presentation by a citizen of a fraudulent claim or false testimony for reference to the commission was an imposition on his own government, and if that government afterwards discovered that it had in this way been made an instrument of wrong towards a friendly power, it would be not only its right but its duty, to repudiate the act and make reparation as far as possible for the consequences of its neglect if any there had been. International arbitration must always proceed on the highest principles of national honor and integrity. Claims presented and evidence submitted to such a tribunal must necessarily bear the impress of the entire good faith of the government from which they come, and it is not to be presumed that any government will for a moment allow itself knowingly to be made the instrument of wrong in any such proceeding. No technical rules of pleading as applied in municipal courts ought ever to be allowed to stand in the way of the national power to do what is right under all the circumstances. Every citizen who asks the intervention of his own government against another for the redress of his personal grievances must necessarily subject himself and his claim to these requirements of international comity. None of the cases cited by counsel are in opposition to this. They all relate to the disposition to be made of the proceeds of international awards after they have passed beyond the reach of the governments and into the hands of private parties. The language of the opinions must be construed in connection with this fact. The opinion of the Attorney-General in *Gibbes' Case*, 13 Opinions, 19, related to the authority of the executive officers to submit the claim of Gibbes to the second commission after it had been passed on by the first, without any new treaty between the governments to that effect; not to the power to make such a treaty.

2. The first section of the act of 1878 authorizes and requires the Secretary of State to receive the moneys paid by Mexico

under the convention, and to distribute them among the several claimants, but it manifests no disposition on the part of Congress to encroach on the power of the President and Senate to conclude another treaty with Mexico in respect to any or even all the claims allowed by the commission, if in their opinion the honor of the United States should demand it. At most, it only provides for receiving and distributing the sums paid without a protest or reservation, such as, in the opinion of the President, is entitled to further consideration. It does not undertake to set any new limits on the powers of the Executive.

The fifth section, as we construe it, is nothing more than an expression by Congress in a formal way of its desire that the President will, before he makes any payment on the Weil or La Abra claims, investigate the charges of fraud presented by Mexico,

" and if he shall be of the opinion that the honor of the United States, the principles of public law, or considerations of justice and equity require that the awards, . . . . or either of them, should be opened and the cases retried," that he will " withhold payment . . . . until the case or cases shall be retried and decided in such manner as the governments of the United States and Mexico may agree, or until Congress may otherwise direct."

From the beginning to the end it is, in form even, only a request from Congress to the Executive. This is far from making the President for the time being a *quasi* judicial tribunal to hear Mexico and the implicated claimants and determine once for all as between them, whether the charges which Mexico makes have been judicially established. In our opinion it would have been just as competent for President Hayes to have instituted the same inquiry without this request as with it, and his action with the statute in force is no more binding on his successor than it would have been without. But his action as reported by him to Congress is not at all inconsistent with what has since been done by President Arthur. He was of opinion that the disputed " cases should be further investigated by the United States to ascertain whether this government has

been made the means of enforcing against a friendly power claims of our citizens based upon or exaggerated by fraud," and, by implication at least, he asked Congress to provide him the means " of instituting and furnishing methods of investigation which can coerce the production of evidence or compel the examination of parties or witnesses." He did report officially that he had " grave doubt as to the substantial integrity of the Weil claim " and the " sincerity of the evidence as to the measure of damages insisted upon and accorded in the case of La Abra . . . Company." The report of Mr. Evarts cannot be read without leaving the conviction that if the means had been afforded, the inquiries which Congress asked for would have been further prosecuted. The concluding paragraph of the report is nothing more than a notification by the President that unless the means are provided, he will consider that the wishes of Congress have been met, and that he will act on such evidence as he has been able to obtain without the help he wants. From the statements in the answer of Secretary Frelinghuysen in the Key case, it appears that further evidence has been found, and that President Arthur, upon this and what was before President Hayes, has become satisfied that the contested decisions should be opened and the claims retried. Consequently, the President, believing that the honor of the United States demands it, has negotiated a new treaty providing for such a re-examination of the claims, and submitted it to the Senate for ratification. Under these circumstances it is, in our opinion, clearly within the discretion of the President to withhold all further payments to the relators until the diplomatic negotiations between the two governments on the subject are finally concluded. That discretion of the Executive Department of the government cannot be controlled by the judiciary.

The United States, when they assumed the responsibility of presenting the claims of their citizens to Mexico for payment, entered into no contract obligations with the claimants to assume their frauds and to collect on their account all that, by their imposition of false testimony, might be given in the awards of the commission. As between the United States and

the claimants, the honesty of the claims is always open to inquiry for the purposes of fair dealing with the government against which, through the United States, a claim has been made.

Of course, in what we have said we express no opinion on the merits of the controversy between Mexico and the relators. Of that we know nothing. All we decide is, that it was within the discretion of the President to negotiate again with Mexico in respect to the claims, and that as long as the two governments are treating on the questions involved, he may properly withhold from the relators their distributive shares of the moneys now in the hands of the Secretary of State.

*The judgment in the case of the La Abra Company is affirmed with costs, and that in the case of Key is reversed with costs, and the cases remanded with instructions to dismiss the petition of Key.*