SHAPLEIGH ET AL. *v.* MIER.

No. 125.   Argued December 9, 1936.—Decided January 4, 1937.

*Mr. H. R. Gamble* for petitioners.

*Mr. Richard F. Burges* for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The action is trespass for the trial of title.

Plaintiffs, petitioners here, are citizens of Missouri; defendant, respondent here, is a citizen of Mexico. A tract of 337 acres in Texas, known as "El Guayuco Banco No. 319," on the left bank of the Rio Grande river, is the subject matter of the controversy. A jury having been waived, the trial was by a judge, who made his findings of fact and conclusions of law, and gave judgment for defendant. From this there was an appeal, its scope, however, narrowed by the manner of the trial and the form of the decision. *Eastman Kodak Co.* v. *Gray*, 292 U. S. 332; *Harvey Co.* v. *Malley*, 288 U. S. 415; *Fleischmann Co.* v. *United States*, 270 U. S. 349. A single question was open: were the conclusions of law supported by the facts as found, when supplemented by any other facts within the range of judicial notice? The Court of Appeals for the Fifth Circuit affirmed the judgment of the District Court. 83 F. (2d) 673. We granted certiorari to pass upon the contention, strongly pressed by the petitioners, that their rights had been illegally divested through the action of a foreign government.

The land in controversy was once part of the Mexican state of Chihuahua. In 1926 it was cut by avulsion from

the south or right bank of the Rio Grande to the north or left bank, and became part of the United States. By the ordinary rule a change of location resulting from avulsion would have left Mexico still sovereign over the territory thus moved, the centre of the old channel remaining as the boundary. *Missouri* v. *Nebraska,* 196 U. S. 23, 35; *Nebraska* v. *Iowa,* 143 U. S. 359, 361, 367, 370. Here a different rule applied by force of a convention, proclaimed June 5, 1907 (35 Stat. 1863), whereby the boundaries were to shift in the event of future changes, with exceptions not now material as to population and area. A Boundary Commission, previously established but confirmed by the Convention, marked the change upon the ground. Sovereignty was thus transferred, but private ownership remained the same. *United States* v. *Chaves,* 159 U. S. 452, 457; *United States* v. *Percheman,* 7 Pet. 51, 86. To find the title to the land today we must know where title stood while the land was yet in Mexico.

In 1925, before the river had wrought the change, proceedings were begun for the division of a "latifundium," which embraced the land in controversy, and for its acquisition by the state. A petition in due form was submitted to the Governor of Chihuahua, and resulted in a decree, dated March 5, 1925, whereby the State of Chihuahua was proclaimed to be the owner. The District Judge has found that the plaintiffs and those from whom they trace their claim were notified of the proceedings and were given the opportunity to prove their title, but failed to do so. The judge has also found that the proceedings were regular and valid, that there was no requirement in the Constitution or laws of Mexico whereby payment must be made or secured at or before the time of expropriation, and that by force of the decree the plaintiffs were divested of any title that had been theirs. Following this expropriation, the defendant, who is now in possession, filed with the proper officials an application

that he be permitted to buy the lands in suit, acquiring by that request an inchoate or potential interest, which was afterwards perfected by the payment of the purchase price.

Petitioners, concede that the expropriation decree, if lawful and effective under the Constitution and laws of Mexico, must be recognized as lawful and effective under the laws of the United States, the sovereignty of Mexico at the time of that decree being exclusive of any other. *Oetjen* v. *Central Leather Co.*, 246 U. S. 297; *Ricaud* v. *American Metal Co.*, 246 U. S. 304; *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347; *Underhill* v. *Hernandez*, 168 U. S. 250; *Hewitt* v. *Speyer*, 250 Fed. 367; *Earn Line S. S. Co.* v. *Sutherland S. S. Co.*, 254 Fed. 126; *Oliver American Trading Co.* v. *United States of Mexico*, 5 F. (2d) 659; *Compania M. Y. R. R., S. A.* v. *Bartlesville Zinc Co.*, 115 Tex. 21; 275 S. W. 388. The question is not here whether the proceeding was so conducted as to be a wrong to our nationals under the doctrines of international law, though valid under the law of the situs of the land. For wrongs of that order the remedy to be followed is along the channels of diplomacy. "A citizen of one nation wronged by the conduct of another nation, must seek redress through his own government." *United States* v. *Diekelman*, 92 U. S. 520, 524. Cf. *Ware* v. *Hylton*, 3 Dall. 199, 230; *Young* v. *United States*, 97 U. S. 39, 67, 68; *Frelinghuysen* v. *Key*, 110 U. S. 63, 71, 75. Indeed, a tribunal is in existence, the International Claims Commission, established by convention between the United States and Mexico, to which the plaintiffs are at liberty to submit and have long ago submitted a claim for reparation. *Convention of September 8, 1923,* proclaimed March 3, 1924; 43 Stat. 1730. What concerns us here and now is the efficacy of the decree under the land law of Mexico at the date of its proclamation to extinguish hostile claims of ownership and pass the title to another.

Petitioners are content thus to limit the inquiry, if we read their argument aright. They insist that the decree which purports to divest them of their title, is a nullity even by the law of Mexico, and that it is the duty of our courts, if the nullity has been made out, to adjudge ownership accordingly. Meeting the objection that the acts of an independent government done in its own territory are not subject to reëxamination by the courts of another (*Underhill* v. *Hernandez, supra; Oetjen* v. *Central Leather Co., supra; Hewitt* v. *Speyer, supra; Oliver American Trading Co.* v. *United States of Mexico, supra*), they say that the land in controversy is now a part of the United States; that it was brought into our domain by a treaty of cession, the avulsion being merely the occasion that made the treaty operative; and that in passing upon the validity of the Mexican decree we are adjudicating a claim of title to part of our own soil. To do this, they maintain, is an incident of the judicial function. Meeting the objection that by the findings of the trial court the decree and the proceedings leading up to it are valid, they make a twofold answer. They say that the laws formerly prevailing in territory acquired by treaty or convention are those of an antecedent government rather than a foreign one, and are the subject of judicial notice. *Fremont* v. *United States,* 17 How. 542, 557; *United States* v. *Perot,* 98 U. S. 428, 429, 430; *United States* v. *Chaves, supra,* p. 459. They say again that if such notice is not appropriate, a finding as to a foreign law is not solely one of fact, but one of fact and law compounded, which may be reviewed upon appeal, like a finding in certain circumstances as to the meaning of a document. Wigmore, Evidence, vol. 5, § 2558; *Fitzpatrick* v. *International Ry. Co.,* 252 N. Y. 127, 139, 140; 169 N. E. 112; *Saloshin* v. *Houle,* 85 N. H. 126; 155 Atl. 47; *Compania Transcontinental* v. *Mexican Gulf Oil Co.,* 292 Fed. 846; *Hanley* v. *Donoghue,* 116 U. S. 1, 6.

We leave for another case a delimitation of the principles thus invoked by the petitioners to clear a pathway to review. To delimit them with accuracy is unnecessary now, for, accepting them, provisionally, in their fullest length and breadth, we find the expropriating decree to be proof against assault. The defect imputed to it is expropriation in advance of payment or without adequate security, either payment or security being necessary in the view of the petitioners to effect a change of title. What the decree does provide is that there shall be "indemnity" to the owners, whoever they may be, for every interest condemned, and that bonds of the state shall be delivered as a medium of payment. Experts testifying for the defendant tell us that such indemnity is adequate under the Constitution of the Federal Republic (Constitution of Mexico, 1917, Art. 27), and also under the Agrarian Law of the State of Chihuahua. Cf. *Sweet* v. *Rechel*, 159 U. S. 380; *Crozier* v. *Krupp*, 224 U. S. 290, 306; *Phillips* v. *Commissioner*, 283 U. S. 589, 597; *Hurley* v. *Kincaid*, 285 U. S. 95, 104. The pertinent articles are quoted in the record, and give reasonable support to the opinion so expressed.* Other witnesses testifying for the plain-

---

*Constitution of Mexico, 1917, Article 27:

"Private property shall not be expropriated except for reasons of public utility and by means of indemnification.

"The Nation shall have at all times the right to impose on private property such limitations as the public interest may demand as well as the right to regulate the development of natural resources, which are susceptible of appropriation, in order to conserve them and equitably to distribute the public wealth. For this purpose necessary measures shall be taken to divide large landed estates; to develop small landed holdings. . . . Private property acquired for the said purposes shall be considered as taken for public utility. . . .

"During the next constitutional term, the Congress and the State Legislatures shall enact laws, within their respective jurisdictions, for the purpose of carrying out the division of large landed estates, subject to the following conditions. . . .

"(e) The owners shall be bound to receive bonds of a special issue to guarantee the payment of the property expropriated. With this

tiffs, advance a different view. Opinions of the Supreme Court of Mexico are laid before us in the briefs, and were summarized by the witnesses, though they were not exhibits at the trial. One gives color of support to the view advanced for the petitioners. Five of later date tend the other way. There is testimony that by the law of Mexico five decisions are necessary to give rise to a controlling precedent. For anything to the contrary appearing in the record, the claimants are still at liberty, though their estate has been divested, to receive delivery of bonds of the State of Chihuahua upon giving evidence of title.

In what has been written, we have assumed in favor of the petitioners, but without intending to decide, that the land law of Mexico in the territory now part of Texas is a proper subject of judicial notice. The assumption helps

---

end in view, the Congress shall issue a law authorizing the States to issue bonds to meet their agrarian obligations."

Agrarian Law of the State of Chihuahua:

"Article third: Owners of larger extensions of lands than those prefixed in Article 1st, are under the obligations to divide into fractions their lands, and, to this effect a term of ninety days is granted them from the date on which this law goes into effect, so that they may select the extension of land they can keep; and another term of six months, from same date, is granted them for the formulation of the project for the division into fractions of the land in excess, which project is to be submitted to the Executive of the State for its approval attaching thereto corresponding plats of the land together with authentic title deeds."

"Article sixth: By the mere fact that the owners, do not present the plats to the Executive of the State in the form and terms as provided for in the article 3rd., it shall be understood that they refuse to divide the latifundium, into fractions, and the Executive of the State shall carry it out (the division into fractions of said latifundium) by means of expropriation in accordance to provision of subsection C, or the section VII of Article 27th, of the General Constitution."

them nothing. A different case would be here if they were able to refer us to documents or other evidence *dehors* the present record establishing a different rule from that stated in the findings. In such conditions, the doctrine of judicial notice might be a crutch on which to lean. But none of these extrinsic aids to judgment has been placed at our disposal. Neither through any reference to documents nor through other sources of information has anything been added to what has been developed by the witnesses in the pages of this record. The situation is thus the same, whatever the extension of the doctrine of judicial notice, as if the record stood alone.

Heed must be given to the burden of proof, at least when other tests are lacking. In this action to establish ownership, petitioners must recover, if at all, on the strength of their own title. Judicial notice is unavailing to rid them of that burden. To say that a court will take judicial notice of a fact, whether it be an event or a custom or a law of some other government, is merely another way of saying that the usual forms of evidence will be dispensed with if knowledge of the fact can be otherwise acquired. Wigmore, Evidence, vol. 5, § 2567; Thayer, Preliminary Treatise on the Law of Evidence, pp. 277, 308. But the truth, of course, is that judicial notice and judicial knowledge are far from being one. The law is not so vain as to make pretense of their identity. To the contrary, a court that is left without knowledge of a fact after exploring to the full every channel of information must needs decide against the litigant who counts upon the fact as an essential of his claim. *De non apparentibus et de non existentibus eadem est ratio.*

We are not persuaded upon this record, supplemented by everything now brought to our attention, that the law of Mexico is other than by the concurrent judgments of the courts below it has been here adjudged to be. That

being so, petitioners have not maintained the burden of overcoming the decree. Their claim of title fails.

The judgment is

*Affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.