LILLIAN HANNES, Plaintiff, *v.* KINGDOM OF ROUMANIA MONOPO-
LIES INSTITUTE, Defendant.

Supreme Court, Special Term, New York County, September 17, 1938.

*Delafield, Marsh, Porter & Hope* [*Wilmurt B. Linker* and *Charles W. Root* of counsel], for the defendant.

SCHMUCK, J. The defendant makes this application solely and exclusively for the purpose of pleading immunity from suit. It seeks an order whereby is decreed the refusal of this court to accept jurisdiction of this action on the ground that the action relates to the public debt of the Kingdom of Roumania, that the sovereign rights of the said kingdom are involved and affected by the action, that the defendant is an agent or instrumentality of the said kingdom, that the Kingdom of Roumania and the defendant as its agent and instrumentality respectively decline to submit to the juris-

diction of this court, that the property of the Kingdom of Roumania and the defendant, as its agent and instrumentality, is not subject to the jurisdiction or judgment of this court, and, finally, that the warrant of attachment had herein and the complaint herein be respectively vacated and dismissed for the lack of jurisdiction.

There is no principle of law more firmly intrenched in our jurisprudence than that a sovereign government, domestic or foreign, is immune from the jurisdiction of foreign courts and cannot be sued, directly or indirectly, without its consent. This imperviousness to suit applies not only to actions in which the government is a party but also to any proceeding in any wise directly or tangentially affecting its property or questioning its sovereign acts. Particularly universal is the rule obtaining in international law that when a question of the public debt of a sovereign nation is involved, the shield of immunity from suit in the courts of a foreign nation is impenetrable.

In this matter the undebatable material data shows that plaintiff is a holder of coupons attached to bonds of an issue known as "Kingdom of Roumania Monopolies Institute 7% Guaranteed External Sinking Fund Gold Bonds, Stabilization and Development Loan of 1929," that Kingdom of Roumania Monopolies Institute was created by law of the Kingdom of Roumania whereby it became an agency and instrumentality of that government in the exercise of its sovereign capacity, that no private interests of any kind whatsoever are either directly or indirectly concerned with the administration of the institute, that the securities referred to in the complaint are embraced in the public debt of Roumania, not only because of its guaranty of the funds and coupons but also by reason of its absolute ownership and control of the institute, that the funds attached by the plaintiff are funds which have been deposited with the Chase National Bank of the City of New York and the City Bank Farmers Trust Company as assets of the Roumanian government in its sovereign capacity, that the Roumanian Minister to the United States in behalf of his government lays claim to the fund so deposited and in his official capacity respectfully declines for his sovereign to submit to the court's jurisdiction, and, finally, that the Attorney-General of the United States, through the United States Attorney for the Southern District of New York, calls attention to the comity existing between civilized governments in accordance with the procedure indicated by the United States Supreme Court in *Matter of Muir* (254 U. S. 522) and *Compania Espanola* v. *Navemar* (303 id. 68).

The situation thus portrayed evokes the following juridical pronouncements: The defendant in its character as an instrumentality of the Kingdom of Roumania is entitled to sovereign immunity, that the national interest of Roumania in the subject-matter of this action unalterably precludes this court from accepting jurisdiction under the doctrine of sovereign immunity, that despite the provision in article 1 of the law creating the defendant whereby its operations are designated as commercial and the provision in article 3 (c) granting the institute the power to sue and be sued there is no impairment or destruction of the claim of sovereign immunity, that no authority is vested in the courts of a foreign State to enforce the provision of the loan agreement (Art. 4, § 2) whereby a charge upon certain governmental revenues for the service of or as security for the debt created by the said agreement is laid, and, lastly, that the assertion of interest by a sovereign State when evidenced to the court by proper source must be accredited.

As the authorities are examined, a plenitude of substantiation for the proposition asserted is readily discoverable. In *Hassard* v. *United States of Mexico* (29 Misc. 511; affd., 173 N. Y. 645) we find the following statement: " It is an axiom of international law, of long-established and general recognition, that a sovereign State cannot be sued in its own courts, or in any other, without its consent and permission. * * * So far as this doctrine is applied to foreign powers, it is obviously based upon sound considerations of international comity and peace."

Of like importance *Compagnia Mercantil Argentina* v. *U. S. Shipping Board* (93 L. J. K. B. 816); *The Crimdon* (35 T. L. R. 81); *Oliver American Trading Co.* v. *Government of United States of Mexico* (5 F. [2d] 659); *Dexter & Carpenter, Inc.*, v. *Kunglig Jarnvagsstyrelsen* (43 id. 705), and *Bradford* v. *Director General of Railroads of Mexico* ([Tex. Civ. App.] 278 S. W. 251). In *Wulfsohn* v. *Russian Republic* (234 N. Y. 372) we read: " To cite a foreign potentate into a municipal court for any complaint against him in his public capacity is contrary to the law of nations, and an insult which he is entitled to resent."

In our own jurisdiction a study of *Leubrie* v. *State of Sao Paulo* (N. Y. L. J. April 30, 1937, p. 2160) fails to indicate any denial of the principle herein laid down, while a careful analysis of *Holzer* v. *Deutsche Reichsbahn Gesellschaft* (160 Misc. 597) confirms it.

As further guidance is sought we learn from *Berizzi Bros. Co.* v. *S. S. Pesaro* (271 U. S. 562); *Ezra* v. *Lamont* (149 Misc. 912; affd., 241 App. Div. 805; affd., 265 N. Y. 635), and *Lamont* v. *Travelers Ins. Co.* (N. Y. L. J. Jan. 31, 1933, p. 611; affd., 254

App. Div. 511) that the national interest of the Kingdom of Rou-
mania in the subject-matter of the action compels the court to
decline jurisdiction even though that sovereignty is not a defendant
in the action.   No matter how critical or meticulous the search,
no justification for this action or the proceedings had herein can be
discovered.   As was held in *Shapleigh* v. *Mier* (299 U. S. 468)
and *Banque de France* v. *Equitable Trust Co.* (33 F. [2d] 202) for
wrongs of the character here being considered, the remedy to be
followed is along the channels of diplomacy.   Injury to a citizen
of one country by another nation can only be redressed by his
government.   His government must assume the duty of pressing
his claim.

Complaint dismissed and warrant of attachment vacated.   Settle
order.