SHAPLEIGH et al. v. UNITED FARMS CO.
No. 8871.

Circuit Court of Appeals, Fifth Circuit.
Dec. 7, 1938.

288

Gustave A. Stamm and Maurice L. Stewart, both of St. Louis, Mo., for appellants.

J. H. McBroom and Frank B. Clayton, both of El Paso, Tex., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

This is a consolidated suit in trespass to try title to four certain parcels of realty located in Hudspeth County, Texas, and known as Camp Rice Banco, No. 313; Nunez Banco, No. 314; El Diablo Banco, No. 318; and El Diablo Segundo Banco, No. 320.

Appellants contend that all four bancos were at various times cut from Mexico by avulsive changes in the channel of the Rio Grande River; and that they were cut from La Santisima, a tract to which appellants claim title through a chain beginning by confirmation by the President of Mexico in 1864, and by the Mexican Statute of Limitations. Appellee claims title to the bancos in question by chain of title beginning with patents from the State of Texas bearing dates between 1860 and 1878, and the Texas Statute of Limitations.

Much evidence was offered in the court below, and many exceptions taken. At the conclusion of the testimony, and on motion, the court directed a verdict for appellee.

Numerous specifications of error are alleged. We have considered the record in its entirety and find no reversible error in the admission of any questioned evidence. Moreover, there is no merit in appellants' contention that they acquired title by the Mexican Statute of Limitations. The point for decision in the case is whether or not the trial court committed error in directing a verdict for the defendant.

In the course of the trial below Camp Rice Banco was eliminated from the suit and we have now before us for consideration, Nunez Banco, El Diablo Banco, and El Diablo Segundo Banco.

In a suit in trespass to try title the burden is on the plaintiff to clearly establish that the land in dispute was comprehended within the description recited in his muniments of title, or prove that he has acquired title by operation of statute. He must recover on the strength of his own title, and not on the weakness of that of his adversary. Shapleigh et al. v. Mier, 5 Cir., 83 F.2d 673, affirmed 299 U.S. 468, 57 S.Ct. 261, 81 L.Ed. 355, 113 A.L.R. 253.

While there was some evidence of an avulsive change in the river channel at some undetermined time in the vicinity of these bancos, the plaintiffs wholly failed in their proof.

As to El Diablo Segundo Banco, the date of the alleged avulsive change is nowhere shown in the record. The appellants failed to prove that the banco was within their muniments of title. Their muniments of title, in addition to metes and bounds description, give the river as being the northern boundary of their land. The appellee's muniments of title give the river and its meanderings as being the southern boundary of their land. This particular banco is now on the northern side of the Rio Grande river. "The presumption is in favor of present boundary lines, and the burden of proof is on the party alleging the location of the line to have been changed by the forces of nature." 9 C.J. 271.

"The party who asserts that the channel of a water course recognized as the boundary line is not in fact, at the point in controversy, the true boundary, resting his contention upon a sudden shifting of the course of the channel, assumes the burden of proving that fact." Plummer v. Marshall, 59 Tex.Civ.App. 650, 126 S.W. 1162, 1163.

Appellants introduced in evidence the reports of the consulting engineers of the International Boundary Commission which described El Diablo Banco as having been cut from Mexico by avulsion in 1926. If this be true, appellants' title to this banco would have been defeated by reason of the expropriation decree of the Governor of Chihuahua, Mexico, dated March 5, 1925, which decree has been upheld by this court in Shapleigh et al. v. Mier, supra. Any portion of appellants' tract within the jurisdiction of Mexico on the date of the expropriation decree was divested out of them at that time. Therefore, appellants can have no title to this banco, and cannot be heard to question another's title to it.

Appellants contend that the Nunez Banco was cut from La Santisima by an avulsive change in the river channel in 1886. The finding of the International Boundary Commission engineers was introduced to support this date. Therefore, they seek to avoid the effect of the expropriation decree of 1925, alleging that said banco was not subject to the jurisdiction of Mexico at that time, by reason of the Treaty of March 20, 1905, between the United States and Mexico, 35 Stat. 1863, which provided for the elimination of bancos.

The testimony of Manuel L. Cardona, engineer, was read in evidence by appellants from another case (Shapleigh et al. v. Mier) which involved La Santisima tract. The record shows that Cardona made a survey in 1923. The testimony of the witness being: "I made this survey in 1923. * * * The river is approximately in the same position now, but the survey was made in accordance with field notes of the papers of Mr. Shapleigh, given to me by Mr. Haff. He sent me a certified copy of one of the deeds, but I don't remember what deed it was." The witness further testified:

"If I had followed the original field notes as given in the deed the line would have been below the line involved in this suit, and in Mexico. * * * If I had followed the original field notes it would never close. * * * The field notes which I followed when I made the survey in 1923 are the field notes shown in plaintiff's exhibit, No. 18. (Deed from Davis to Shapleigh.) I never followed on the ground the field notes as used in the confirmation deed from Macmanus to Davis. I did not make any survey on the other field notes. * * * If I take the original field notes in the deed from Bennett Davis to Shapleigh and others and run those field notes just as they are called for they will not meet.

"I couldn't follow the field notes from the deed from Macmanus to Bennett Davis because I found some changes in the field. I used the field notes in the deed made by Sostens Rodriguez, plaintiffs' exhibit No. 18.

"I made one survey, according to the field notes used in the deed from Bennett Davis to Shapleigh and associates. In making that survey I twice departed from the calls in the field notes."

These changes in the field notes being necessary to open and close the survey, this evidence, upon which appellants must rely to recover, was wholly insufficient to sustain their burden of proof, to-wit, that the lands in question were embraced in their tract.

Verdicts cannot rest upon guess or conjecture. " * * * a court that is left without knowledge of a fact after exploring to the full every channel of information must needs decide against the litigant who counts upon the fact as an essential of his claim. De non apparentibus et de non existentibus eadem est ratio." Shapleigh et al. v. Mier, 299 U.S. 468, 57 S.Ct. 261, 264, 81 L.Ed. 355, 113 A.L.R. 253.

From the record it appears that the appellants failed to carry their burden of proof and that the trial court was correct in directing a verdict for the defendant.

The judgment is affirmed.