GARY CASTERLOW *v.* STATE OF INDIANA.

[No. 2-473A99. Filed June 18, 1975.]

*Harriette Bailey Conn,* *(Mrs.)*, Public Defender of Indiana, *David P. Freund,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Eric L. Wyndham,* Deputy Attorney General, for appellee.

WHITE, J.—Appellant Casterlow's robbery conviction was affirmed on appeal.[1] He now appeals from the denial of his petition for post-conviction relief, contending the evidence shows both that he was not adequately represented by counsel at trial and that there exists evidence of material facts not previously presented and heard. Finding no merit in either contention, we affirm.

During the presentation of evidence at the hearing on Casterlow's petition for post-conviction relief, the public defender moved the court to

> "take notice of its own trial record in this case. I believe that the trial record shows that six hundred and seventy dollars was introduced into evidence by the police by the prosecutor in this case."

The court pointed out that the transcript of that evidence was in the Supreme Court and that "since I can't take judicial notice of the record . . . that I don't in fact have, I don't

---

1. *Casterlow* v. *State* (1971), 256 Ind. 214, 267 N.E.2d 552.

know how I can do what you ask me to do." Finally, however, after both parties had rested the court said:

"I have been looking through and I found something, namely: the Supreme Court opinion and in discussing the evidence, it shows that six hundred dollars was found in a restroom, so I will sustain your motion and take judicial notice."

It seems clear from this colloquy that the PCR judge was asked to take judicial notice *only* of the fact that "six hundred and seventy dollars" was introduced into evidence at the robbery trial and that he did just that after reading the Supreme Court opinion which is now found in *Casterlow* v. *State* (1971), 256 Ind. 214, 267 N.E.2d 552. It appears that the public defender at the hearing was satisfied with the extent to which the judge limited his cognizance of the criminal trial evidence. No claim of error in that regard is noted in the motion to correct errors or in Casterlow's brief. But the argument made in his brief invites this court to take a much broader and more detailed notice of the criminal trial evidence than was requested of the PCR court. He asks that we do so for the purpose of assisting Casterlow both in sustaining his burden (under *Wilhoite* v. *State* [1971], 255 Ind. 599, 601, 266 N.E.2d 23) of showing that the evidence not presented at the trial was such as to raise a strong presumption that it would probably change the result if a new trial were granted, and in sustaining his burden (under *Blackburn* v. *State* [1973], 260 Ind. 5, 291 N.E.2d 686) of showing that the trial taken as a whole was a mockery of justice. Which is to say that we are invited to consider evidence not considered by the PCR court in order to decide whether that court reached the wrong result when it denied post-conviction relief. If we did so we would be invading the province of the trial court whose duty and prerogative it is to weigh the evidence and find the facts. *Wood* v. *Northwestern Insurance Co.* (1871), 46 N.Y. 421.

If Casterlow and his counsel (the state public defender) wished this evidence to be considered in the decision of this

case it was their responsibility not only to ask the PCR court to do so but to make it possible for the PCR court to do so. Had Casterlow made available to that court the transcript of the prior trial testimony and pointed out what part or parts thereof were relevant to his petition for post-conviction relief and had the court failed or refused to consider it, that could possibly have constituted reversible error. Judicial notice is not judicial knowledge and when the case of the party with the burden of proof depends upon the court taking judicial notice of a fact not within his judicial knowledge, that party must furnish the court with the means to bring it within his knowledge.

"To say that a court will take judicial notice of a fact, whether it be an event or custom or a law of some other government, is merely another way of saying that the usual forms of evidence will be dispensed with if knowledge of the fact can be otherwise acquired. 5 Wigmore, Ev. § 2567; Thayer, Preliminary Treatise on Ev. pp. 277, 308. But the truth of course is that judicial notice and judicial knowledge are far from being one. The law is not so vain as to make pretence of their identity. To the contrary, a court that is left without knowledge of a fact after exploring to the full every channel of information must needs decide against the litigant who counts upon the fact as an essential of his claim." *Shapleigh* v. *Mier* (1937), 299 U.S. 468, 475, 81 L.Ed. 355, 57 S.Ct. 261, 113 A.L.R. 253, 257. See also 29 Am. Jur.2d 56, Evidence § 17, and annotation 113 A.L.R. 258, 259.

"There are many things that courts would notice if brought before them that beforehand they do not know. It rests with counsel to take the proper steps, and if they deliberately omit them, we do not feel called upon to institute inquiries on our own account." *Quong Wing* v. *Kirkendall* (1912), 223 U.S. 59, 64, 56 L.Ed. 350, 352, 32 S.Ct. 192, 193. (Opinion by Justice Holmes.)

Almost all of the evidence at the PCR hearing related to certain bank accounts maintained by Casterlow and his wife. Both testified that around the end of October Casterlow received $1,000 from a Christmas Club account. A bank employee produced records showing that on December 6 Casterlow withdrew $1,237.33 from their savings account,

leaving a balance of $2,100.00. He and his wife both testified that the $670 found on him the day after the robbery (which took place on December 23) was the remainder of the Christmas Club money. They both testified that his trial counsel did not present that evidence to the court even though both urged him to do so.

As to evidence on other points, Casterlow, describing why he felt his trial lawyer did not properly present the issue of no probable cause for his arrest, described a pre-arrest confrontation type identification process. He made no other reference to the pre-trial identification procedure or to the testimony of the identifying witnesses. He also made a passing reference to "my jacket and my hood and a magazine" that had been taken from his car and which he said the prosecution had on a table in the courtroom. When the robber was described as wearing a jacket of a different color the prosecutor moved the things from the top of the table to the floor under the table and did not introduce them into evidence.

Casterlow's wife testified that at the trial she

> "heard two witnesses sit in this chair and one of them said he had processed hair and a mustache and another said he had his face all covered. I heard two witnesses give two different identifications and wasn't nothing done anything about."

She also testified that the jacket the prosecution had belonged to her 10 year old son, would not fit Casterlow, was not the same color as that worn by the robber, and that she had trial unsuccessfully to make Casterlow's trial attorney bring this out.

There clearly is insufficient evidence to show that Casterlow's trial counsel did not adequately cross-examine the identification witnesses, or that he acted unwisely in relation to a jacket that was never offered into evidence. There might be evidence that he did not sufficiently object to a pre-trial identification process that possibly might conflict with standards enunciated by the United States Supreme Court had that pre-trial identification process not occurred prior to June

12, 1967, the date those non-retroactive standards were enunciated. See *Lewis* v. *State* (1969), 252 Ind. 454, 461, 250 N.E.2d 358, 362.

In short, the evidence adduced at the hearing shows only that Casterlow's trial attorney declined to introduce evidence available to him which would have shown that some two and one-half weeks or more prior to the robbery Casterlow legitimately had in his possession a relatively large sum of money, a fact which might both tend to account for the money in his possession the day after the robbery and imply that he was not in such dire financial straits that he needed to resort to robbery. The ultimate probative value of such evidence to foster reasonable doubt of guilt appears slight at best (*Reynolds* v. *State* [1897], 147 Ind. 3, 7), and, conceivably, the large withdrawal so soon after receipt of the Christmas Club refund could imply a need for money. If for that reason, or any other reason, Casterlow's attorney, in the exercise of his best judgment, determined that the evidence would not be helpful and might even be harmful, then it was his duty to resist the Casterlows' efforts to induce him to bring it before the court. The making of such tactical judgments is one of the most valuable services experienced trial counsel can render their clients during a trial.

As was said in *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686, 696:

"... 'there is a presumption that an attorney has discharged his duty fully, and it requires strong and convincing proof to overcome this presumption.' ... [citing cases]. ...

"... Isolated poor strategy, bad tactics, a mistake, carelessness, or inexperience does not necessarily amount to ineffective counsel unless, taken as a whole, the trial was a mockery of justice. ..."

Even if it could be said that Casterlow's attorney made what now appear to have been mistakes, nothing has been shown which renders the trial "a mockery of justice."

Casterlow's second argument on this appeal is that the bank accounts constitute "evidence of material facts, not

previously presented and heard, that requires vacation of [his] conviction," in accord with PCR 1, § 1(a)(4). He does not contend that they are either newly-discovered evidence or evidence that was not in his possession at the time of trial, but instead that they are evidence that, through no fault of his own, was "not previously presented and heard."

Inasmuch as we herein decide that evidence of the bank accounts, even if it were in fact newly discovered evidence, would not require vacation of Casterlow's conviction, we need not pass on his interpretation of PCR 1, § 1(a)(4).

In *Tomlin* v. *State* (1975), 163 Ind. App. 559, 325 N.E.2d 516, 518, quoting *Wilhoite* v. *State* (1971), 255 Ind. 599, 601, 266 N.E.2d 23, 25, we held:

> " 'To justify a new trial, the newly discovered evidence . . . must be material and decisive in nature and must be such as to raise a strong presumption that it would probably change the results of the trial.' "
> See also *Asher* v. *State* (1971), 256 Ind. 381, 384, 269 N.E.2d 156, 158; *Johnson* v. *State* (1974), 262 Ind. 183, 313 N.E.2d 542, 544.

The evidence presented at the hearing (and the description of the evidence at the trial contained in *Casterlow* v. *State* [1971], 256 Ind. 214, 267 N.E.2d 552) clearly establishes that both victims of the robbery identified Casterlow as the robber. The $670 found in Casterlow's possession the day after the robbery and introduced into evidence was at the most additional circumstantial evidence of his identity as the robber. *Bryant* v. *State* (1973), 157 Ind. App. 198, 299 N.E.2d 200, 206.

There is nothing in the record before us that indicates that the result in Casterlow's trial would have been different had the money not been introduced into evidence, or even mentioned, at that trial. Thus the evidence of Casterlow's bank accounts is not "such as to raise a strong presumption that it would probably change the results of the trial."

The judgment is affirmed.

Sullivan, P.J., and Buchanan, J., concur.

NOTE.—Reported at 329 N.E.2d 631.