Wachtler, J.
(dissenting). Money deposited in an American bank which is payable at any of its branches, should not be deemed to have its situs in every country in which the bank may have a branch office, so that the debt may be *474 extinguished by any government which decides to confiscate the account “located” within its borders. The concept that a debt may have multiple situses — in every jurisdiction where the debtor has established an office — has never been held by the Supreme Court to be an essential or acceptable ingredient of the Act of State doctrine.
A more conservative application of the Act of State doctrine should not bar the courts of this State from granting the plaintiff any relief in this case. Although the suit is occasioned by the confiscation of bank assets in Cuba, it involves only private litigants and the question as to which of them must bear the loss: the bank whose assets were physically confiscated; or the depositor whose intangible account, payable at any of the bank’s worldwide branches, was designated in the Cuban order of confiscation. If the Act of State doctrine requires this court to abstain from considering the legality or illegality of the foreign seizure, and thus from deciding the case on that ground, it should not preclude the court from resolving this private dispute by consideration of other factors in much the same manner as we would if it had been precipitated by an act of nature.
The Act of State doctrine, which precludes the courts of this country from adjudicating the legality of acts of foreign governments, is akin to the rule which requires the courts to abstain from deciding political questions. It is a rule of Federal law which, although not expressly stated in the Constitution, has “constitutional underpinnings” and is binding on all courts, both State and Federal (Banco Nacional de Cuba v Sabbatino, 376 US 398, 417, 421, 427). It is based on the principle that matters relating to foreign affairs are primarily within the province of the political branches of the Federal Government, and that it is inappropriate for the courts to pass on such matters in the context of individual suits because it could lead to confusion or embarrassment in an area in which the Nation should speak with one voice (Banco Nacional de Cuba v Sabbatino, supra, pp 423, 427-428). Thus, when the courts invoke the Act of State doctrine they are not enforcing the right of a private litigant. Instead they are exercising judicial restraint by declining to decide a question which should properly be resolved through the political process *475 by the political branches of the government charged with responsibility for the conduct of foreign affairs.
The application of the doctrine to foreign seizures of physical assets, such as ships, real estate, raw materials and other products, has posed little difficulty for the courts. In such cases the location of the property at the time of the confiscation is a matter of fact which is generally conceded (see, e.g., Oetjen v Central Leather Co., 246 US 297; Ricaud v American Metal Co., 246 US 304; Shapleigh v Mier, 299 US 468; Banco Nacional de Cuba v Sabbatino, supra). Any threshold questions as to whether the property seized was within the territorial jurisdiction of the confiscatory power, have also been reduced to matters of fact. As Justice Holmes observed, in a case where it was urged that a plantation seized by troops from Costa Rica was actually in Panama: “The fact, if it be one, that de jure the estate is in Panama does not matter in the least; sovereignty is pure fact” (American Banana Co. v United Fruit Co., 213 US 347, 358).
When, however, a foreign government has purported to seize an intangible asset “within” its territory, it is not clear from the Supreme Court decisions whether the Act of State doctrine is applicable and, if so, how it is to be applied (cf. Alfred Dunhill of London v Cuba, 425 US 682, 690). The problem, of course, is that an intangible, such as a debt, has no actual physical location and can only be said to be “located” within a jurisdiction as a matter of law or “legal fiction” (Severnoe Securities Corp. v London & Lancashire Ins. Co., 255 NY 120, 123 [Cardozo, J.]). If the doctrine does generally apply to intangibles it poses two problems for the courts. First, in order to determine whether the doctrine precludes the courts from considering the legality of the seizure in a given case, the court must decide, as a matter of law, the threshold question as to whether the intangible had its legal situs in the confiscating country. Thus the court must apparently violate the concept and determine the legality of the seizure, at least to the extent of determining the threshold question as to whether the confiscating country could lawfully exercise jurisdiction over the asset. This may be a tolerable intrusion into foreign affairs, although it is conceivable that a *476 judicial resolution of the “limited” jurisdictional question could interfere with the political branches by undermining a position they have previously, and perhaps secretly, taken or might otherwise adopt in the future with respect to this or similar confiscatory acts.
Secondly, the courts must decide which law or legal fiction is most appropriate for fixing the situs of the intangible, bearing in mind that nothing is more intangible than the laws respecting the situs of an intangible (Tabacalera Severiano Jorge, S.A. v Standard Cigar Co., 392 F2d 706, 714).
One of the many rules the courts may choose from, in determining the legal situs of an intangible asset, is the rule that the asset travels with the creditor (Severnoe Securities Corp. v London & Lancashire Ins. Co., supra, p 123; Farmers Loan Co. v Minnesota, 280 US 204). That rule is supported by fiscal reality since a debt can only be said to be an asset of the creditor, and not the debtor for whom it is a liability (Railroad Co. v Pennsylvania, 15 Wall [82 US] 300, 320; Farmers Loan Co. v Minnesota, Supra, pp 211-213). Application of that rule to this case would permit the plaintiff to recover since the record does not establish that the creditor-depositor, and thus her intangible asset, was in Cuba at the time of the confiscation. The affirmed factual findings show only that the depositor fled Cuba before the confiscation, and made one or more return trips in early 1959 at unspecified times. There are also affirmed findings that the debt was payable in this State, and thus could be enforced against the bank which also has its headquarters in this State.
The complicating factor is that the facts establish that the debt was payable at any of the bank’s branches anywhere in the world. That, of course, would include the branch it continued to maintain in Cuba at the time of the confiscation and for sometime afterwards, until the Cuban government nationalized its remaining assets. Because of these circumstances the bank and the amicus, New York State Bankers Association, urge that the court adopt the rule that the plaintiff’s intangible asset should be held to have its legal situs where the debtor was located, although they disagree as to whether the rule should extend to all of *477 the branches, as Chase contends, or only to the Cuban branch, as the amicus urges.
The court has applied the rule tendered by the defendant by relying on cases in which the debtor was not present in the confiscating country, or the debt was held not to be payable there (Republic of Iraq v First Nat. City Bank, 353 F2d 47, cert den 382 US 1027; Menendez v Saks & Co., 485 F2d 1355, 1364; United Bank v Cosmic Int., 392 F Supp 262, affd 542 F2d 868, 873; Weston Banking Corp. v Turkiye Garanti Bankasi, A. S., 57 NY2d 315; Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d 220). Adoption of the rule in those cases placed the intangible beyond the confiscating power and, therefore, leaves open the question as to whether the courts would have found the same rule appropriate if it would have yielded a different result. The question was candidly reserved in the leading case (Republic of Iraq v First Nat. City Bank, 353 F2d 47, cert den 382 US 1027, supra) where the court stated (at p 51): “[I]n the absence of any showing that Irving Trust had an office in Iraq or would be in any way answerable to its courts, we need not consider whether [our] conclusion would differ if it did”. That the selection of the “proper” rule is essentially a policy decision is underscored by the opinion in Menendez v Saks & Co. (485 F2d 1355, revd on other grounds sub nom. Alfred Dunhill of London v Cuba, 425 US 682, supra). In that case the Cuban government urged that the court employ the competing rule, that the debt follows the creditor, and observed that it had been endorsed by the Supreme Court and indeed held constitutionally mandated in another context. The court rejected the argument simply noting that the Supreme Court’s determination with respect to situs was based on different “policy” considerations (see, also, Tabacalera Severiano Jorge, S.A. v Standard Cigar Co., supra).
In sum, the cases employing the rule that an intangible is located where the debtor can be found do not establish a fixed rule of law under the Act of State doctrine and can only be so construed if the policy nature of the decisions is ignored (e.g., Trujillo-M v Bank of Nova Scotia, 51 Misc 2d 689, affd without opn 29 AD2d 847, cert den 393 US 982). What is more significant is that the court’s decision to *478 employ the rule in the prior cases served to “place” the asset within a single country. This is apparently the first case in which the rule has been applied to the Act of State doctrine in such a way as to expose deposits made in an American bank, payable in United States currency at any of its branches worldwide, to confiscation by any country in which the bank maintains a branch office.
This extension of the rule comes at a time when the rule itself has been discarded or abandoned in most, if not all, other areas of American jurisprudence. In recent years the Supreme Court has consistently found constitutionally unacceptable the notion that an intangible asset may be located, and therefore be subject to seizure by a third party, wherever the debt may be enforced against the debtor (see, e.g., Farmers Loan Co. v Minnesota, supra; Texas v New Jersey, 379 US 674; Shaffer v Heitner, 433 US 186; Rush v Savchuk, 444 US 320). In those cases the court has noted in particular that the natural tendency of the rule is to establish multiple situses for the debt, which could leave the creditor in an unfair position. One of the cases recently overruled is our own decision in Seider v Roth (17 NY2d 111).
Similarly the Supreme Court’s most recent decisions with respect to the Act of State doctrine, all of which have been pluralities, also limit its application and call into question many of the premises on which it rests (see First Nat. City Bank v Banco Nacional de Cuba, 406 US 759, supra; Alfred Dunhill of London v Cuba, 425 US 682, supra). The Supreme Court has never considered whether for the purposes of the Act of State doctrine an intangible bank asset may be said to be present wherever the debt is enforceable against the bank. It is interesting to note, however, that the cases holding the rule applicable in that context have relied on older Supreme Court decisions (e.g., Harris v Balk, 198 US 215), which, as noted above, have recently been overruled by that court. The majority has admittedly relied on the overruled cases in the case now before us. Therefore, acceptance of the bank’s position in this case resurrects dead concepts, extends the Act of State doctrine far beyond the Supreme Court’s holdings and creates a kind of international Seider v Roth.
*479 In a narrow sense the Supreme Court’s recent decisions rejecting the rule that a debt has its situs wherever it can be enforced against the debtor are distinguishable because they deal with the jurisdiction of the States, as opposed to that of foreign countries. Our courts, of course, cannot place jurisdictional limitations on foreign governments, as they can with respect to the States. But the broader principle the cases stand for is that the courts can and should reject the legal fiction of a ubiquitous debt or one which roves with the debtor, when the rule is capable of producing unfair results between private litigants. That is a principle which can be enforced even when the private suit has been prompted by the confiscatory act of a foreign State.
Judicial deference to the Act of State dpctrine can be accomplished in this case by ignoring legal fictions concerning intangibles and focusing instead on the fact that the only assets physically seized were those belonging to the bank. There is no doubt that the Act of State doctrine precludes the courts from considering the legality of Cuba’s act in seizing the bank’s assets. The court must accept, as a fact, that the title to the assets passed to the Cuban authorities and that they cannot be recovered from that government or from those to whom it may transfer the assets (see, e.g., Oetjen v Central Leather Co., supra; Banco Nacional de Cuba v Sabbatino, supra). With that issue Out of the case the fact remains that the bank has sustained a loss which it now seeks to shift to the depositor by refusing to pay the account. In my view it should not be permitted to do so.
The essence of the relationship between the parties is that the bank agreed to safeguard the depositor’s money. It did so in the midst of a revolution by accepting deposits from a person whose husband was an official in the government under attack. The bank specifically agreed that the certificates would be redeemed at any of its branches, most of which are in this country, and further agreed to pay in United States currency. Even after the revolution had succeeded, the bank remained in Cuba and maintained assets all of which could have been, and in fact ultimately were, confiscated by the Cuban government. Under these circumstances it could be said that the bank was fully *480 aware of and accepted the risk of confiscation of its assets, and should not be permitted to refuse to honor its commitment to this depositor after her arrival in this country.
Accordingly, I would affirm the order of the Appellate Division.
Judges Jasen, Jones, Meyer and Simons concur with Judge Kaye; Judge Wachtler dissents and votes to affirm in a separate opinion in which Chief Judge Cooke concurs.
On defendant’s appeal, order reversed, without costs, and judgment of Supreme Court, New York County, reinstated. Plaintiff’s appeal dismissed, without costs.