**LONDON GUARANTEE & ACCIDENT CO.,
Limited, v. THETFORD et al. (No. 935—
4727.)**

(Commission of Appeals of Texas, Section A.
March 30, 1927.)

**Master and servant ⟲⟹417(5)—Evidence held
not to raise issue of compensable injury to
employee while riding in fellow servant's car
(Workmen's Compensation Act, Rev. St.
1925, art. 8309, § 1).**

There being no obligation on part of employer to transport employee to and from place of work, but it having merely given him privilege of riding in its cars, subject to being called on to assist in loading and unloading supplies, *held* that issue of his injuries received while riding to work with a fellow servant in such servant's private car, being sustained in the course of his employment, within Workmen's Compensation Law (Rev. St. 1925, art. 8309, § 1), was not raised by the evidence.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by Mrs. Myrtle Thetford and others against the London Guarantee & Accident Company, Limited. Judgment for defendant, on instructed verdict, was reversed (286 S. W. 1113), and defendant brings error. Reversed, and judgment of trial court affirmed.

Luther Hoffman, of Wichita Falls, for plaintiff in error.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for defendants in error.

HARVEY, P. J. Upon trial of this case in the trial court before a jury, a verdict was instructed for the plaintiff in error, and judgment rendered accordingly. On appeal by the defendants in error, the judgment of the trial court was reversed and the cause remanded by the Court of Civil Appeals. 286 S. W. 1113. The case is now before us on writ of error. The following statement of the case is adopted from the opinion rendered by the Court of Civil Appeals, to wit:

"This suit was instituted in the district court of Wichita county, Tex., by Mrs. Myrtle Thetford and by her three minor children, through her, as next friend, appellants, against the London Guarantee & Accident Company, Limited, the appellee, to recover under the provisions of the Workmen's Compensation Law of this state for the death of her husband and the father of the children, N. J. Thetford, who was killed by an accident while in the employ of the Mutual Oil Company, which carried indemnity insurance with the appellee.

"Appellants presented their application for compensation for the death of the deceased to the Industrial Accident Board of the state, compensation was refused, and they gave notice that they would not abide the result of the final order of the board, and in due time filed this suit.

"They alleged that N. J. Thetford was on April 30, 1924, the date of the accident resulting in his death, an employee of the Mutual Oil Company and acting in the course of his employment, and while assisting in the transportation of certain tools from Wichita Falls to a lease belonging to his employer in Archer county, and while riding in the car of one of his coemployees in which the tools were being transported as a result of an accidental collision between the car in which he was riding and a car driven by R. D. Underwood, he was killed; that prior to the time of the accidental collision, which resulted in the death of deceased, his employer had obligated itself to furnish him transportation from his home in Wichita Falls, Tex., to his place of work on the lease in Archer county, Tex., a distance of about 25 miles; that if appellants are mistaken as to an express obligation to furnish such transportation, then the employer of the deceased had impliedly bound and obligated itself to transport him from his home in Wichita Falls to his usual place of work on the lease in Archer county, Tex.

"The appellee answered by general demurrer, general denial, and alleged that the deceased was not injured in the course of his employment, but was engaged in a private enterprise for his own pleasure, and was in no way connected with the furtherance of the affairs of his employer; that on the afternoon prior to the accident deceased quit his work on the lease of the Mutual Oil Company in Archer county, Tex., after the hours of his employment were over, and secured permission from M. Marshall to ride with him in his automobile to Wichita Falls, which, as an accommodation to the deceased, the said Marshall granted; that upon arriving at Wichita Falls the deceased secured permission to return to the lease on the following morning with Marshall in his private automobile; that on the date of the accident the deceased and Marshall left Wichita Falls in Marshall's car, and on the way to the lease, on which the deceased was employed to work, the collision occurred which resulted in his death.

"The case was tried before a jury, and at the conclusion of the testimony the trial judge directed a verdict in favor of the appellee, from which action the appellants prosecute this appeal.

"The evidence tends to show that the appellants are the legal beneficiaries of N. J. Thetford, who lost his life in an automobile accident

⟲⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

on a public road leading from Wichita Falls, where he lived, to the lease of his employer in Archer county, on which he worked, approximately 25 miles; that said road was the one usually and customarily traveled by the employees of the Mutual Oil Company going from Wichita Falls to the lease; that the Mutual Oil Company carried indemnity insurance with appellee for the benefit of its employees; that the deceased had been working as a roustabout for said company for about six weeks at the time of his death; that the employer had no accommodations for its employees who desired to stay and sleep on the lease; that some of them stayed in the vicinity, and some lived in Wichita Falls, going to and from the lease practically every day. A few of them occasionally slept in the engine room or warehouse on the lease, upon bedding they furnished and spread upon the floor; that the company secured its supplies and tools in Wichita Falls and transported them to the lease in trucks and automobiles; that special trips were not ordinarily made for that purpose, but, when such tools or supplies were needed, they were carried in the early morning to the lease on these motor vehicles, and some of the employees, who stayed at Wichita Falls, were permitted almost each day to ride to their work on such vehicles; that the company owned a truck driven by M. Marshall, used for transportation purposes both on the lease and from Wichita Falls to the lease; that it owned and furnished to the timekeeper, Jacob G. Eipper, a car called a Ford tool pusher, which he used to make the trip from Wichita Falls to the lease and back every day, and which was also used for hauling purposes; that it owned and furnished to M. H. Shanahan, its assistant superintendent, a Buick touring car for his use, and in which he went to and from the lease and to other places on business for his company, and in which sometimes material was carried to the lease; that these machines made the trip from Wichita Falls to the lease and back nearly every night and morning, and that each employee in charge of one of the machines had his headquarters or home in Wichita Falls, and made the trip back and forth practically every day; that the company knew that said employees used these machines to go back and forth to their work, and knew they carried other employees back and forth in said machines almost daily; that each of them on different occasions carried the deceased to his work in the morning and brought him home at night; that he would meet these respective employees, usually at the Kemp Hotel in Wichita Falls, early in the morning and ride to his work; that on several occasions he helped to load tools into the machines at Wichita Falls to be carried to the lease. On a few occasions he reached his work after 7 o'clock, the hour for beginning, but nothing was deducted from his wages on account of his arriving late; that the evening before the accident occurred the next morning the truck driver, M. Marshall, having no heavy tools nor supplies to be carried out to the lease, came to Wichita Falls in his private car and brought the deceased with him; that they started from Wichita Falls to the lease in Marshall's private car on the next morning, and on the road regularly and customarily traveled the collision occurred in which the deceased lost his life.

"The testimony tends to show that M. H. Shanahan, a few days after deceased began work, agreed with him that he might stay at home in Wichita Falls at night, and ride to his work each morning, and ride home after work hours each evening in some one of the company's machines, as he would be needed lots of times to assist in loading and unloading tools into and out of the machines; that the regular working hours of the deceased ended at 5 p. m. each day, but occasionally he worked overtime, and when he did, he would spend the night on the lease, sleeping on his bedding spread down on the cement floor of the engine room, because he was unable, after working extra time, to secure a ride home on one of the machines of the company; that he worked 7 days a week at $5 per day, and as often as 5 nights each week he came to his home in Wichita Falls on one of the trucks or automobiles of the company and returned to his work the following morning the same way, and the company knew of this practice and custom of the deceased and made no objection thereto; that during his employment each day on which the deceased went to his work and returned home he rode in one of the company's machines driven by one of its employees, until the evening preceding the accident, M. Marshall, the truck driver, brought deceased home in his private car, because on that particular occasion there was nothing except small tools to be transported the next morning from Wichita Falls to the lease, all of which could be and were carried in the private car of Marshall, who desired to drive his own car on that day rather than the truck of the company. He and the deceased were returning to work next morning in said private car at the time of the accident which cost the deceased his life."

Supplementary to and in amplification of the statement of the evidence as made by the Court of Civil Appeals, above set forth, we make this further statement, to wit:

There is no evidence that Thetford ever at any time helped load tools or supplies, in Wichita Falls, on the truck driven by Marshall, though there is evidence to show that he helped load the Ford tool pusher driven by Jacob G. Eipper, with whom he frequently rode to and from town. The undisputed testimony shows that, on the afternoon before the accident in which Thetford lost his life, Marshall contemplated going in his own automobile from the lease to Wichita Falls to spend the night and return to the lease next morning. The only tools or supplies for the oil company which he contemplated bringing back with him the next morning from the city were a blowtorch and a soldering iron. As he was preparing to leave the lease for the city, Thetford asked him for permission to ride with him. We here quote extracts from the testimony of Marshall, which is undisputed:

"I left the lease the night before Mr. Thetford was killed, about 6 o'clock. As to what arrangements Mr. Thetford made with me about coming to town the night in question, he asked me if I was going to town, and I told him that I

was, and he asked me if he could ride with me. * * * As to whether I made special trips from the lease to town to get tools as I needed them out there, or whether I just came in town and remained in town over night and took tools back next morning I stayed in town most of the time; and then when I needed tools, I would simply go to the toolhouse in the morning, before I started out, and I would go and get the tools and take them out as I went out. That is what I did on the morning in question. When I would come in town the night before, with the expectation of having to take tools out the next morning, I would always drive the truck. I did not drive the truck on this particular occasion for the reason that I only had to get small tools for the lease and it was not necessary for me to have the truck to transport those tools out to the lease; for that reason I drove my personal car rather than drive the truck for those small tools. * * * Mr. Thetford told me he wanted to come in town to see his family. He said he had a boy with a broken leg. He told me that he wanted to go in and see the boy that night. He was off of work at 5 in the afternoon. He left the lease in my car about 6, as soon as I could get washed up and change clothes. * * * I did not make no special trip for the soldering iron and blowtorch that night. I would have come in anyway for it in my car. * * * I don't remember now just when I got to town. It was about sundown. I dropped him at his house. I got the blowtorch and soldering iron that night. He was not with me when I got it. He did not go with me anywhere next morning except to start out to the lease. I don't know where I picked him up the next morning, but I believe I drove by his house. I am not real sure, but I believe I did. I picked him up about 6 o'clock. We went straight towards the lease. Yes; it was my own car. It was a Chevrolet. Yes; I furnished the oil and gas myself to run it. The company did not furnish me anything to run the car with."

The only evidence disclosed by the record relating to an agreement between M. H. Shanahan and Thetford, with reference to Thetford riding back and forth between town and the lease in the company's machines and to Thetford assisting in the loading and unloading of tools and supplies in Wichita Falls, is the testimony of the witness Brown, as follows:

"I heard a conversation between Thetford and Shanahan after he, Thetford, was employed, about sleeping conditions on the lease. * * * At that time Thetford mentioned something about having to get some more bedclothes to take out there as he was sleeping uncomfortably, and Shanahan told him he need not go to any trouble or expense for that, as there was no sleeping quarters out there, and that there would always be some one coming backwards and forwards, he or some of the boys, and Thetford said all right. Shanahan laughed and said that he could help load tools, load and unload them, as they needed him lots of times. That conversation took place just a few days after Thetford had gone to work for Shanahan. * * * I don't recall Mr. Shanahan saying that if he was coming in he would be glad to bring him along as an accommodation to him. He told him all right, that he would use him lots of times loading tools."

The pertinent provisions of section 1 of Article 8309, of Revised Civil Statutes of 1925, provides that the term, "injury sustained in the course of imployment," as used in the Workmen's Compensation Law, shall include all injuries—

"of every kind and character having to do with and originating in the work, business, trade, or profession of the employer while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere."

In our opinion, the evidence contained in this record does not raise an issue of fact as to the injuries which resulted in the death of Thetford having been sustained by him in the course of his employment, within the meaning of the provisions of the statute quoted above. At most, the evidence goes no farther, even if it go that far, than to show that whenever Thetford chose to avail himself of the privilege, extended to him by the oil company, of riding to and from town in one of the company's automobiles, the duties of his employment, by virtue of that fact, were so enlarged as to include the giving aid, on the particular trip, in the loading and transportation of tools and supplies from town to the lease. There was no obligation, either express or implied, on the part of the company to transport Thetford to or from the lease where, under his general employment engagement, he was required to do the work he was employed to do. Giving the widest possible application to the evidence, his employment engagement did not contemplate an obligation or duty on the part of Thetford to perform any service in behalf of his employer in Wichita Falls, except upon such special occasions as he might choose to avail himself of the privilege of riding to or from town in one of the company's cars. On the occasion of the accident in question, Thetford had not ridden to or from town in a company car. He had ridden to town, and was riding at the time of the accident, in a car owned and controlled by Marshall and not by the company. His presence in the car was a privilege which he had sought and obtained from Marshall, in furtherance of his own purposes and affairs. On the trip he was not under any duty to the oil company, as employee, and was not engaged in or about the furtherance of its affairs or business. He was not subject to any service in behalf of the company, and in fact performed none; nor was the trip to or from town made in contemplation of the performance (in course of the trip) of any service for the company. If Thetford had made the trip in one of the company's cars in pursuance of the privilege given by assistant superintendent Shanahan, thereby subjecting himself to being called on, during the trip, to aid in the loading or the transportation

of tools or supplies for the company, a different question might have been presented. But we have no such case here, and we express no opinion in regard to that question.

We have found no decision in this state, and have been cited to none, which, in our opinion, would justify a holding that there is evidence in this record which raises the issue that Thetford's injuries were sustained in the course of his employment, within the meaning of the statute. The trial court, in our opinion, correctly instructed a verdict for the plaintiff in error.

We recommend that the judgment of the Court of Civil Appeals, reversing the judgment of the trial court, be reversed and that the judgment of the trial court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed and that of the district court affirmed, as recommended by the Commission of Appeals.