## TEXAS EMPLOYERS INS. ASS'N v. GRAMMAR.

### No. 13092.

Court of Civil Appeals of Texas. Dallas.

Nov. 28, 1941.

Rehearing Denied Jan. 9, 1942.

Wynne & Wynne, of Wills Point, and Ramey, Calhoun, Marsh & Sheehy, of Tyler, for appellant.

West & Stanford, of Canton, and White & Yarborough, of Dallas, for appellee.

BOND, Chief Justice.

This is a case arising under the Workmen's Compensation Law, Vernon's Ann. Civ.St. Art. 8306 et seq. On findings of the jury, judgment was entered, sustaining compensable injury, from which this appeal is prosecuted. The only question presented is that appellee, at the time he received his injuries, was not in the course of his employment with Morton Salt Company.

Appellee, Sam Grammar, was injured by being struck by a motor vehicle while walking down a public highway to his employer's premises where he would perform the tasks of his daily employment. He was employed by Morton Salt Company at its plant located about a mile or a mile and a half south of the town of Grand Saline. He had no task to perform outside the plant. At the time of his injury, Grammar had not begun his employment for the day; had not reached his employer's premises, and was doing nothing in furtherance of his employer's business. The relation of master and servant did not exist at the time of his injury.

The record shows that some of the employes of Morton Salt Company were re-

quired to begin work at the plant at 7:30 in the morning; others at 6:30. Those beginning at 7:30 were privileged to ride to work in the company trucks. They were told that if they wanted to ride in the trucks, they should meet at a certain place in time to arrive at the plant at 7:30 Those beginning at 6:30 had to make other arrangements. There is no evidence of agreement concerning transportation. Transportation was no part of the contract of employment with either group. Some employes walked, others rode in private cars, and some few rode in the company trucks. Mr. Grammar was in the 6:30 group; had worked in that group, as a janitor, five or six years, or ever since the plant started; and for two months prior to his injury, he picked out blue lumps of salt (non-commercial) that came out on a shaker. The janitor work was required to be done between 6:30 and 7:30 A. M., for which he was allowed an extra hour on his daily wages. Mr. Grammar selected his own way of going to the plant to begin his work; never used the company trucks, except in a few instances after he first began working at the plant. On the morning of the accident, he left home early in order to reach the plant by 6:30 and, while walking on the highway en route to work, before the hour to begin his employment, he was severely injured by an automobile. He saw the automobile approaching in a zigzag manner, evidently being operated by a drunken driver, and in a vain attempt to escape being struck, stepped off the road into the barrow pit or ditch, where he was knocked down and injured.

We think it is now well established in this state that, as a general rule, an employe, while going to and from his place of work, is not in the course of his employment, and the injuries he receives while so engaged are not compensable under the Workmen's Compensation Act of this state. United States Fidelity & Guaranty Co. v. Flanagan, 134 Tex. 374, 136 S.W.2d 210; Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192; London Guarantee & Accident Co. v. Thetford, Tex.Com.App., 292 S.W. 857; American Indemnity Co. v. Dinkins, Tex.Civ.App., 211 S.W. 949; Sullivan v. Maryland Casualty Co., Tex.Civ. App., 82 S.W.2d 1089; Aetna Life Ins. Co. v. Palmer, Tex.Civ.App., 286 S.W. 283, writ refused; London Guaranty & Accident Co. v. Smith, Tex.Civ.App., 290 S.W. 774, writ refused; Banks v. Commercial Standard Ins. Co., Tex.Civ.App., 78 S.W.2d 660.

Sec. 1, Art. 8309, R.C.S.1925, Vernon's Ann.Civ.St. art. 8309, § 1, in defining the term "Injury sustained in the course of employment," after excluding injury sustained in a certain manner, provides: " * * * shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employé while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Under this provision of the statute, it has been uniformly held that an injury received by an employe is compensable only when of such kind and character as had to do with and originated in the work, business, trade or profession of the employer, and when the injury occurred at a time when the employe was engaged in or about the furtherance of his employer's business.

In the case of Sullivan v. Maryland Casualty Co., supra, recovery was denied by our Court of Civil Appeals on the ground that the employe had chosen to go to work by the shortest route, leading through an alley, across a railroad track and down a poorly lighted street, and while on the street, about 150 feet from the employer's premises, he was assaulted; the reason advanced for refusal of compensation being that, the employe was subject only to the ordinary hazards of the street, and was at the place where he was injured only for the purpose of reaching his place of labor. In Aetna Life Ins. Co. v. Palmer (writ refused), supra, the deceased, a general foreman, was subject to call at any time. On the morning of the accident, he had been ordered to be at the plant early for a special purpose. As he was walking to the plant, he was struck by a passing truck. The court held that the injury had not been sustained in the course of his employment; that the fact he was subject to call at any time did not require a use of the public streets different from that for which all persons use them at such times. Recovery was also denied in London Guaranty & Accident Co. v. Smith (writ refused), supra. The claimant, a salesgirl and assistant buyer, whose hours on Saturday were until 9 o'clock, had been instructed by her employer to hurry home for supper, then return and go to a hotel to inspect samples of merchandise. She was injured while crossing the street on her way to supper. The court held that the injury had not been received in the course of employment, reasoning, among other things, that her act was

not one in furtherance of her employer's business. In Banks v. Commercial Standard Ins. Co., supra, the employe had been delayed by his foreman on the way to lunch, and was struck while hurrying across the street toward a restaurant. There was the additional fact that he was subject to call throughout the day. This court denied recovery on the ground that the hazards the employe encountered on the public street were not different from those to which the public in general was exposed, and in going on the street he was not acting in furtherance of any business for his employer. In American Indemnity Co. v. Dinkins [211 S. W. 952], the deceased, after leaving his employer's premises for the day, was struck by an automobile while riding his motorcycle on a public highway. The route taken by the employe was the only one that could have been used, and the company not only tacitly invited the employes to use it, but practically required them to do so. The court held that the injury was not one received in the course of employment, but, on the contrary, was one that might occur to any person on any street, regardless of his employment. In the course of the opinion, the following oft-quoted language is used: "Was the injury sustained by Dinkins one which originated in the work of his employer, and was it also sustained while he was engaged in or about the furtherance of the affairs of his employer? If so, then what business of his employer was he performing? If one is proceeding to his home for needed rest and refreshment, can he be regarded as engaged in the furtherance of the affairs or business of his employer? If so, then by parity of reasoning the act should be construed to cover injuries received by an employé while he is on his vacation. It is plain that Dinkins sustained his injury after he had abandoned his duties which involved the furtherance of the affairs of the employer."

So, in the case at bar Grammar sustained his injuries before he had taken up his duties of employment; his employer required him to begin work at 6:30 in the morning; he was injured before that hour. His duties, which involved the furtherance of the affairs of his employer, were to begin and be wholly performed at the employer's plant; he was injured on the public highway, more than a quarter of a mile away from the place of his employment. Grammar's employer did not direct or require him to travel the public highway and his employment did not impose upon him the hazards incident to the normal use of such highways. It may be conceded that Grammar received his injuries because of the fact that he was employed by the Morton Salt Company; that he would not have been walking upon the highway at the time and place of the accident and would not have been injured had it not been that he was going to the place of his employment; yet such injury, under the statute, is not compensable. In walking on the highway, Grammar was exposed to danger as a member of the public. To entitle him to recover, the injury must have been received by him while engaged in the work or business of his employer and must have resulted from a risk or hazard which was necessarily, or reasonably, inherent in or incident to the conduct of such work or business.

The Workmen's Compensation Law intends to protect employes against risks or hazards taken or imposed upon them in order to perform the employer's work or business. It is firmly settled, says our Supreme Court in Smith v. Texas Employers' Ins. Ass'n, supra [129 Tex. 573, 105 S.W.2d 193], "that compensation is not allowable for injuries to employees while going to or returning from the place of their employment, except in certain particular cases [citing authorities]. This conclusion is based on the premise that one injured upon the streets or highways while going to or from his work suffers his injury as a consequence of risks and hazards of the streets and highways to which all members of the public are alike subject, and not as a consequence of risks and hazards having 'to do with and originating in the work, business, trade or profession of the employer.' The statute clearly implies, as has frequently been held, that the injury has to do with and originates in the employment when such injury is the result of some peril, risk, or hazard inherent in or incident to the conduct of the work or business." Indeed, there are clearly defined exceptions to the general rule that injuries received by employes, while going to and from their places of business, on the highways, are compensable. But it will be observed in all such exceptions that the very nature of the work they have contracted to do forces them to the hazards and perils of the streets and highways. Injuries received by a laundry wagon driver while using the streets in performance of his duties in delivering laundry for his employer, are compensable. Employers' Indemnity Corp. v. Kirkpatrick, Tex.Civ.App., 214 S.W. 956. Injuries re-

ceived by an employe while using the streets in the performance of errands for his employer are compensable; Maryland Casualty Co. v. Long, Tex.Civ.App., 9 S.W.2d 458. Many exceptions to the general rule may be cited with authority, but in all such cases the work contracted to be done subjects the injured employe to the risks and hazards of the streets. Such is not this case. The work that Grammar had contracted to do was not performable on the streets and highways; he was not required to expose himself to the risks and hazards of the streets in performance of any work for his employer; he was not performing, at the time of his injury, any service for his employer; and he was not, at the time, covered by Workmen's Compensation Law. As stated by our Supreme Court in the Smith case, supra: "* * * in order that an injury resulting from the risks of the streets may be compensable, the employee, at the time of the injury, must be actually engaged in the performance of some particular duty of his employment, or must be upon some substantial mission of his employer in the course of his employment, which subjects him to such perils."

█ This is a typical case of an employe being injured on a public highway while en route to his place of employment, and before his employment began. It cannot be said that Grammar was injured in the course of his employment. The judgment of the court below is reversed and judgment here rendered for appellant.

Reversed and rendered.

LOONEY, Justice (dissenting).

I recognize that our appellate courts, construing the term "Injury sustained in the course of employment," have repeatedly stated that, as a matter of law, an employe injured upon a public highway, going to or returning from his work, occasioned by a hazard or risk to which all travelers alike are subjected is not to be regarded as being within the course of his employment.

My dissent does not challenge that doctrine, but is based on the proposition that, the facts show the instant case to be an exceptional case and not controlled by that doctrine. It is true, appellee was injured on a public highway, from a hazard to which the traveling public was subjected, but at the time, he was en route to the place of his employment, to perform a service, special in nature, aside from and in addition to his regular daily task. His regular work was to pick from the shaker blue lumps of salt that were later crushed, reduced to brine and evaporated; this had been his daily work for about two months before being injured; which required him (as were other general employes) to be at the mine by 7:30 A. M.; however, under a special arrangement, he was required to reach the mine at 6:30 A. M. to cleanse toilets. For this special service, appellee was allowed one hour's pay. It seems that, customarily, the company furnished transportation to employes desiring to avail themselves of the service, from its uptown plant to the mine, reaching the mine by 7:30. Appellee's testimony is to the effect that, but for the special service undertaken at the behest of his employer, he would have ridden the truck on the occasion in question, hence, I cannot agree that the facts make of this a typical case of an employe injured on a public highway, within the purview of the decisions announcing that doctrine. However, the case described in the majority opinion doubtless presents such a typical case; but I respectfully dissent from the statement and insist that, the version of the majority in regard to the facts is incorrect and not borne out by the record.

The record discloses that appellee had been an employe of the Salt Company many years; had formerly worked at its uptown plant, but, at the time of the injury, was working at the mine, and had worked there since it was opened quite a number of years before. Just preceding the work he was performing at the time of being injured, appellee's regular work had been that of janitor, requiring him to reach the mine by 7:30 A. M.; but, after beginning the work of separating the blue lumps of salt, about two months before being injured, he also took on the special service, requiring him to reach the mine an hour earlier (for which he was allowed an hour's pay); after which, or at 7:30, he began his regular daily task.

The correctness of the statement just made is shown by the undisputed testimony of appellee: Asked:

"Q. What kind of work did you do out there at this mine? A. I was supposed to be janitor, cleaning up, but when (at the time) I got crippled, I was picking blue lumps off the shaker.

"Q. What is that? A. Picking lumps, what they call it, blue lumps that comes out on the shaker.

· "Q. Is that blue lumps of salt? A. Yes Sir. * * *

"Q. Did you have anything else to do out there besides picking up those lumps? A. Yes Sir.

"Q. What was it? A. I had to clean out the ladies' restroom and the boys' restroom. * * *

"Q. What time were you instructed by Mr. King (appellee's foreman) to be on the job there in the mornings? A. He said for me to get out there not later than 6:30; to get out there early and clean the ladies' toilet out the first thing. * * *

"Q. How much did the Morton Salt Company give you credit for (for cleaning toilets)? A. They gave me credit for an hour; that is the contract between me and Mr. King. * * *

"Q. Did you commence picking up the lumps at 7:30 with the others? A. Yes Sir.

"Q. The janitor work was different from the other kind of work, separate from it? A. It was separate from it. * * *"

On cross examination, appellee was asked and answered as follows:

"Q. You mean you wouldn't start picking lumps until you had cleaned up the restrooms? A. Not until I cleaned up the toilets because I had to get it done before 7:30. Those girls got there generally about 7:15. I hadn't had that job but about a couple of months.

"Q. You hadn't had that job but about a couple of months? A. That job there picking up lumps.

"Q. What had you been doing other than cleaning restrooms before you started picking lumps? A. I had been sweeping and cleaning the restrooms and all.

"Q. Did you continue to do that also after you started picking lumps? A. I just continued cleaning the restrooms. I didn't do that until Mr. King come and asked me and told me he would give me an hour extra if I would go clean up the ladies' restroom.

"Q. You got paid for nine hours a day? A. Nine hours a day.

"Q. And the other employes just worked eight hours a day? A. Yes.

"Q. And they all quit at four o'clock? A. Yes.

"Q. And you had been doing that a couple of months before your injury? A. Yes.

"Q. And prior to that time you just worked eight hours a day just like the rest of the boys? A. Yes."

Appellee testified that at the time of the engagement to do this special service, he was not directed by the company how he should reach the mine, or by what direction, stating: "When Mr. King told me to come out there early and clean the toilets up, he didn't tell me which direction to come or anything like that." In view of this undisputed testimony, I think it obvious that the statement in the majority opinion that "Mr. Grammar was in the 6:30 group; had worked in that group, as a janitor, five or six years, or ever since the plant started," is incorrect and not borne out by the record.

In another connection, appellee was asked:

"Q. Did the Morton Salt Company furnish transportation? A. They did to the 7:30 people.

"Q. That is the main bunch of the employes? A. That is the main bunch; them that has to get there earlier has to furnish their own way.

"Q. Did those 7:30 employes—the transportation that is furnished them by the Morton Salt Company—is it by automobile or some other way? A. By automobile truck; pick-up truck, they call it.

"Q. How many of them go that way? A. Them that take that way, sometimes they have got a truckload and sometimes only eight or ten. It is owing to how many they are working.

"Q. Have there been times that you went out there that way with the rest of them? A. Well, not very many.

"Q. Well, was there ever any time that you went out there where they carried you along with the others? A. Yes I did when I first went to work there, when the truck first started, when they didn't take it off. They took it off for awhile. * * *

"Q. Where would the truck that carried the employes, where would it leave from, Mr. Grammar? A. It left from the office at the main plant, the old plant.

"Q. In Grand Saline? A. In town. * * *

"Q. Did they operate that truck and drive it out the same highway where you got injured? A. Yes.

"Q. Was there any other way the truck could go besides that route? A. No. * * *

"Q. Why didn't you ride in the truck furnished by the Morton Salt Company that morning, Mr. Grammar? A. Because it didn't go until I was supposed to be there. It didn't get there early enough. * * *

"Q. At the time when you did go to work at 7:30, did you ride the truck out there? A. Yes."

The undisputed testimony shows that appellee's regular employment required him to be at the mine by 7:30 A. M., and if pursuing that employment exclusively, would have received free transportation, and if injured en route as the result of a highway accident, undoubtedly such an injury would have been in the course of his employment. But, under the special arrangement requiring him to reach the mine by 6:30, no means of transportation having been furnished, appellee was free to walk the usual route traveled and, of necessity, was exposed to the risks and dangers of the highway. This exposure resulted exclusively from and was incident to the special arrangement, which was in addition to his regular employment, requiring him to reach the mine at 6:30 A. M. to clean toilets, an hour earlier than the time for beginning his regular daily task. I fail to observe any logical or reasonable difference between the case at bar and many in which recovery was allowed where an employe, diverted temporarily from his regular task, was required to perform a special service that exposed him to the dangers and risks of the highway, just as was appellee.

The following cases are illustrative: In Globe Indemnity Co. v. Industrial Accident Commission, 36 Cal.App. 280, 171 P. 1088, an award to a bookkeeper and clerk, injured while returning from crossing a street to mail a letter for his employer, was sustained. In Palmer v. Main, 209 Ky. 226, 272 S.W. 736, compensation was allowed to an apartment house janitor who was struck by an automobile on the street, when sent on an errand by the acting manager of the apartment. In Stockley v. School Dist., 231 Mich. 523, 204 N.W. 715, 718, compensation was allowed a school teacher en route to attend a teachers' institute, as directed by the superintendent of his school. In this case, among other things, the court said: "The criterion is not necessarily that others are exposed to the same dangers of travel, but whether with reference to the nature of his employment the performance of a special service within the scope of

such employment, in the interest of or by direction of his employer, particularly subjects an employé to the added danger out of which the accident arises." In Bookman v. Lyle Culvert, etc., Co., 153 Minn. 479, 190 N.W. 984, compensation was allowed a clerical employe who was struck by an automobile while she was on the street to place her employer's mail in a mail box. In Redner v. H. C. Faber & Son, 223 N.Y. 379, 119 N.E. 842, compensation was allowed a workman who was directed by his superintendent to go across the street to the plant of another trunk factory, operated by the same management, to letter a trunk, and on his return, after completing the work, was injured by a fall on the street from slipping on ice. In Kern v. Southport Mill, 174 La. 432, 141 So. 19, the injury complained of was held to have arisen out of and in the course of employment where a pipe-fitter, who had been directed to do some outside work, was struck by an automobile as he stepped from a street car on his way back to his employer's mill. In Morse v. Port Huron, etc., Co., 251 Mich. 309, 232 N.W. 369, the injury complained of was held to have arisen out of the employment where an employe was on his way to make a bank deposit for his employer and was struck by an automobile as he was crossing the street to reach the bank. And, in Globe Indem. Co. v. MacKendree, 39 Ga. App. 58, 146 S.E. 46, 47, among other things, referring to recent decisions involving the Workmen's Compensation Law, said that, "arising out of and in the course of the employment" was apparently receiving, in the majority of the latest cases, more liberal construction in favor of the employe than was formerly the case. The Editor of A.L.R. (Vol. 51, col. 2, p. 514); commenting upon recent compensation cases, had this to say: "The tendency of the later cases towards a more liberal construction of the term 'arising out of and in the scope of the employment' is reflected in the view now most generally taken as to street risks. The majority of the jurisdictions, as shown by the following cases, permit the recovery of compensation where the employee received a street injury while in the course of his employment, although the employment may not have required his presence on the street continually, but only occasionally, or even on the one occasion on which he was injured; Massachusetts apparently being the only jurisdiction recently passing upon this question, to take a contra view."

I submit that, in considering any question involving the construction and application of provisions of the Workmen's Compensation Law, it should constantly be borne in mind that the law is to be given a liberal construction, to effectuate the purpose for which it was enacted, that is, to place the burden of all injuries to and deaths of employes, upon the industry involved.

I think it apparent from the cases cited, and many found in the Digests to the same effect, that the tendency of the more recent decisions is to materially circumscribe by exceptions the general rule announced in the cases cited by the appellant; at least, no tendency is revealed to enlarge the scope of the rule. It would be difficult, in my opinion, to find a material difference between appellee's status at the time he was injured and that of employes involved in the cases cited where compensation was allowed under the Workmen's Compensation Law. To hold otherwise under the facts, I respectfully submit, would, in effect, be to give the phrase "Injury sustained in the course of employment" a strict rather than a liberal construction, for, clearly, appellee was as much a casualty of the industry for which he labored as a soldier wounded upon the battlefield, and, in my opinion, should not be deprived of the benefits of the law by a narrow or casuistical construction.

Appellant offered no evidence. The testimony of appellee was undisputed, should be given a favorable consideration, and when this is done, in my opinion, the evidence authorized the verdict and judgment rendered in his favor. Therefore, I think the judgment below should have been affirmed.

## On Motion for Rehearing.

BOND, Chief Justice.

In our original opinion, we tried to deal fairly with the testimony, that no erroneous conclusion should abide upon our labor. In motion for rehearing, appellee does not challenge our findings. Only in the dissenting opinion filed herein are our conclusions of fact assailed, and that, too, upon wholly immaterial matters, in a vain attempt to advance a theory that was not presented either in the trial court or in briefs before this court. The theory of appellee is that the injury occurred in the zone of his employment.

In vindication of the rectitude of the majority opinion, we must, of necessity, rely upon the record upon which we reached the conclusions assailed. There is neither pleading nor proof to sustain a conclusion that the injured employe sustained injury in doing a special service for his employer, which subjected him to the hazards and perils of the street or highway, or that the employment began before appellee reached the salt mine. Plaintiff alleged that he was "regularly engaged as a day laborer by his said employer, Morton Salt Company, doing all kinds of work he was required to do by his said employer, including picking up lumps, cleaning up ladies' rest room, and other kinds of work; that plaintiff worked the first hour cleaning out the ladies' rest room, beginning about 6:30 A. M., and beginning work at his other duties about 7:30 A. M.; that plaintiff's injuries were sustained about 6:45 o'clock A. M., that plaintiff was approaching, but had not reached the salt mine itself, that plaintiff had been walking down the highway, and at the time of his injuries was walking along by the roadway, but not thereon, that plaintiff was on land either owned or under lease by Morton Salt Company and under the control of Morton Salt Company, therefore plaintiff alleges that he was on the property and premises of Morton Salt Company at the time of sustaining his injuries, was within the vicinity and zone of his work, and was injured between 6:30 and 7:30, and on his employer's time, * * *" (Tr. pp. 3, 4). The proof supports the pleadings that plaintiff had been regularly engaged at the salt mine for four or five years prior to his injury, as a janitor, cleaning up the rest rooms, which was required to be done before 7:30 A.M. Plaintiff testified:

"Q. Sir? What kind of work did you do out there at this mine? A. I was supposed to be janitor, cleaning up, but when I got crippled, I was picking blue lumps off the shaker." (S.F. p. 12).

"Q. Did you have anything else to do out there besides picking up those lumps? A. Yes Sir.

"Q. What was it? A. I had to clean out the ladies' rest room and the boys' rest room." (S.F. p. 13).

"Q. What time were you instructed by Mr. King to be on the job there in the mornings? A. He said for me to get out there not later than 6:30; to get out there early and clean the ladies' toilet out the first thing. * * *

"Q. What time did they get to work, usually? A. They generally got there

about—well, all the way from fifteen minutes to 7:30, and from that until the whistle blows." (S.F. 14).

"Q. The janitor work was different from the other kind of work, separate from it? A. It was separate from it. It is all the same price, only I got an hour for so many minutes—supposed to be the same price, as the other work in the house like I did when I first went out there." (S.F. p. 15).

"Q. You mean you wouldn't start picking lumps until you had cleaned up the rest rooms? A. Not until I had cleaned up the toilets, because I had to get it done before 7:30. Those girls got there generally about 7:15. * * *

"Q. You hadn't had that job but about a couple of months? A. That job up there picking lumps.

"Q. What had you been doing other than cleaning rest rooms before you started picking lumps? A. I had been sweeping and cleaning the rest rooms and all." (S.F. p. 73).

From this recited testimony, it is evident that the ladies' rest room was not on the highway, and that Grammar's "special service" in cleaning up the rest rooms did not subject him to the hazards of the general public who might be traveling along said highway. Furthermore, the testimony is that he was injured before the hour (6:30 A.M.) he was supposed to be at the plant, and was, when injured, on the State highway leading from Grand Saline to Van, and beyond, en route to his place of employment. He was in a group of employees, required to be at the plant at 6:30 A.M. There are no pleadings and certainly no evidence that Morton Salt Company was to furnish transportation, or that it did so for the early employes; Grammar testifying:

"Q. Did the Morton Salt Company furnish transportation? A. They do to the 7:30 people.

"Q. That is the main bunch of employes? A. That is the main bunch; them that has to get there earlier has to furnish their own way. * * *

"Q. Was that truck furnished by the Morton Salt Company? A. Yes Sir, I suppose it was, or the Insurance Company; one or the other made them take it—(Objection sustained)." (S.F. p. 18).

"Q. Why didn't you ride in the truck furnished by the Morton Salt Company that morning, Mr. Grammar? A. Because it didn't go until I was supposed to be there; it didn't get there early enough.

"Q. If it hadn't been necessary for you to get there before 7:30, would you have been on the truck that morning?" (S.F. p. 20). This last question and answer were excluded (and correctly so) by the trial court.

In the light of this record, it is difficult to understand the criticism made of our statement that "Mr. Grammar was in the 6:30 group; had worked in that group, as a janitor, five or six years, or ever since the plant started" as being "incorrect and not borne out by the record"; and that "The version of the majority in regard to the facts is incorrect and not borne out by the record," unless, forsooth, to foster or nourish the idea heretofore expressed (Texas Employers' Ins. Ass'n v. Smith, Tex.Civ.App., 75 S.W.2d 732; Id., 129 Tex. 573, 105 S.W.2d 192; Banks v. Commercial Standard Ins. Co., Tex.Civ. App., 78 S.W.2d 660), but not supported by statute or any decision of our Supreme Court, that injuries sustained by an employe on a street or highway, in going to and from his place of employment, are covered by Texas Workmen's Compensation Law. It is not the character of the work in which the employe is engaged, but the time and place in which the work was to be performed. This injury occurred on the highway before the hour of his employment began, and his work was wholly at the salt mine. The legislative act does not cover the injury; courts should not do so. It is comforting to know that in the dissenting opinion, the law is recognized that " * * * an employe injured upon a public highway, going to or returning from his work, occasioned by a hazard or risk to which all travelers alike are subjected is not to be regarded as being within the course of his employment."

Appellee's motion for rehearing is overruled.