The judgment is reversed and the cause remanded.

### ANTILLEY et al. v. JENNINGS et al.
### No. 2475.

Court of Civil Appeals of Texas. Eastland.
Oct. 20, 1944.

Rehearing Denied Nov. 10, 1944.

Stinson, Hair, Brooks & Duke and Letcher D. King, all of Abilene, for appellants.

Wagstaff, Harwell, Douthit & Alvis and Gray Browne, all of Abilene, for appellees.

LESLIE, Chief Justice.

W. M. Antilley, individually and as next friend for his minor son, instituted this suit against W. K. Jennings and L. C. Jennings, partners doing business as the Sun Electric Company, for damages occasioned by the collision of two cars, one alleged to have been driven by Jennings' agent and servant, A. M. Calvary, and the other by plaintiff's son. The collision resulted in the death of plaintiff's wife and injuries to his minor son.

The defendants answered by general denial and alleged they did not own the car driven by Calvary, had no control over it, and that it was owned by Calvary himself, and that he and those accompanying him were on a mission of their own at the time of the collision. The General Exchange Corporation filed plea of intervention. The trial proceeded before the court and jury, and after the plaintiffs and intervenor had introduced their evidence and rested and before the defendants called any witnesses the court, on defendants' motion, withdrew the case from the jury and rendered judgment for defendants. The plaintiffs appeal, and the parties will be referred to as in the trial court.

A. M. Calvary and E. H. Allen, electricians, were employed by the Jennings to make certain electrical installations necessary in the performance of contracts for work held by them, the Jennings, at Camp Barkeley, southwest of Abilene and the City Airport east of Abilene. Calvary and Allen worked by the day and were paid by the hour. Ordinarily they commenced at 8:30 a. m. and worked eight hours per day, taking thirty minutes for lunch.

The Jennings had a "field office" at Camp Barkeley, but they maintained no boarding or lodging quarters at that place for employees. Some eight or ten reported at the field office for work each day they were needed. Generally they arrived in their respective cars, some coming from Abilene and others from Tye, Merkel, and elsewhere.

Camp Barkeley is about eleven miles from Abilene, Texas, where Calvary and Allen resided. Calvary and his wife occupied an apartment in Allen's home and Allen and Calvary generally went to work in Allen's car, but on the day of the accident, February 28, 1942, Allen was without gasoline and they, for the first time, went in Calvary's car. Calvary was driving, and when about 5½ miles out of Abilene, going west to Camp Barkeley, he (as alleged) drove his car from behind a truck he was following and wrongfully passed on to the south side of the highway and collided with the Antilley car (going east), killing plaintiff's wife and injuring his minor son. Concerning the transaction at the time and place of the collision, the plaintiffs alleged: "* * * that an automobile being driven by (A. M. Calvary) the agent, servant and employee of the defendants, and while in the course of his employment and in the furtherance of his masters' business, was driven suddenly and without warning from behind said truck onto the left hand side of the highway in front of the automobile in which the plaintiff and his deceased mother (Mrs. W. M. Antilley) were riding, which resulted in a head-on collision * * *."

The plaintiffs insist that the evidence was such as to raise pertinent issues of fact carrying the case to the jury, and that the court erred in withdrawing the same from the jury and rendering the judgment appealed from. On the other hand, the defendants insist that the court's action was correct and required under the law applicable to the facts. They contend that the evidence is undisputed in the following respects: (1) that Calvary was the owner of the car he was driving at the time of the collision; (2) that he was on the public highway going to Camp Barkeley, where he intended to perform labor for the defendants; (3) that at the time and place of the collision he was not working for the defendants, but was on a mission of his own

and not in line of duty for them, and, therefore, the court correctly withdrew the case from the jury and entered said judgment.

In reply to the plaintiff's contentions of liability, the defendants succinctly state the controlling issue relating thereto as follows: "In this case we have the simple question of a man (Calvary) driving his own car on a public highway, going from Abilene to Camp Barkeley, Texas, which is a distance of eleven or twelve miles, where he was to report for work, and while on the road and before he had started to work, and in his own car, he was involved in a collision with another car, and the party who was riding with him was killed and Mrs. Antilley was killed and Billie M. Antilley was injured * * *"—hence, no liability on the part of defendants.

The foregoing respective contentions call for a careful examination of the statement of facts. A consideration thereof leads us to the conclusion that the following fact issues are established by the undisputed testimony: The employers (defendants) were in no way concerned or interested in the mode of transportation or the route by which Calvary (or Allen) reached the place where he was to perform labor for them. A paved public highway and "other roads" ran from Abilene to and by Camp Barkeley, and Calvary, as well as Allen, was free to take transportation to point of labor by bus, individual car, or other means. The Jennings in no way undertook to furnish transportation for Calvary and Allen, or either of them. Calvary, as well as Allen, was left free to select his own method of transportation from his residence to his work and the return therefrom. The Jennings owed him no duty with reference thereto. The inherent nature of the work was not such as to require any particular mode of travel. A regular bus "line" and "taxicab companies" operated between Abilene and the Camp. The collision, or alleged tortious injury is not shown to have occurred in the immediate performance of work for the Jennings, but on the public highway leading to the place where work was to be done for them. There is no evidence that said employers expressly or impliedly exercised at any time any character of control over the use or operation of Calvary's car as a vehicle for going to said work or returning therefrom. The evidence is definitely to the contrary. Obviously the collision occurred on the public road and before Calvary had begun his day's work. The admissible evidence as to Allen is of the same nature and effect on issues of alleged liability.

▮ Under the above undisputed facts and circumstances, we are forced to the conclusion that at the time of the unfortunate accident and collision of the cars said Calvary was not in line of duty for his employers, or doing any work whatever for them, but was at such time driving his own car on a mission of his own. Such being the nature of the testimony, the trial court's judgment is correct and sustained by the following authorities, upon which we base our conclusions: Kennedy et al. v. American Nat. Ins. Co., 130 Tex. 155, 107 S.W.2d 364, 112 A.L.R. 916; Rio Bravo Oil Co. v. Matthews, Tex.Civ.App., 20 S.W. 2d 342; London Guarantee & Accident Co. v. Thetford, Tex.Com.App., 292 S.W. 857; United States Fidelity & Guaranty Co. v. Flanagan, 134 Tex. 374, 136 S.W.2d 210; Viney v. Casualty Reciprocal Exchange, Tex.Civ.App., 82 S.W.2d 1088. These last three cases deal with the proposition that an employee even under the Compensation Statute, Art. 8306, Vernon's Ann.Civ.St., is not to be regarded as being within the "scope of his employment" while going to and returning from his work and along the public streets or highways. By analogy the principle has application here under the specific facts proved on the trial.

On the issues of liability above discussed the plaintiffs rely for the reversal of the judgment on the opinion in Texas Power & Light Co. v. Denson, 125 Tex. 383, 81 S.W.2d 36. That opinion, as we understand it and as interpreted by the Supreme Court in the Kennedy case, supra, is not controlling here. Of that case and touching on the decisive element of liability therein, our Supreme Court said [130 Tex. 155, 107 S.W.2d 366]: "There was ample evidence in the Denson case, supra, to support the inference that the servant's use of his own automobile was impliedly authorized by the master."

There was no admissible evidence in the instant case that the master either expressly or impliedly required or authorized Calvary's use of his car at the time of the collision or at any other time or place with reference to his work.

▮ As above pointed out, there was no evidence for the jury to pass on, and the court properly withdrew the case from the jury under such authorities as Win-

inger v. Fort Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150; Allison v. Campbell, 117 Tex. 277, 298 S.W. 523; Texas Employers' Ins. Ass'n v. Ritchie, Tex.Civ. App., 75 S.W.2d 942; 41 T.J. p. 935, sec. 166, sec. 176. These authorities are merely to the effect that to authorize a court to take a question from the jury, evidence must be of such character that there is no room for ordinary minds to differ as to the conclusions to be drawn therefrom. As we see it, the sole question here involved is the legal effort of the uncontroverted evidence upon the controlling issues.

For the reasons assigned, the appellant's points are overruled and the judgment of the trial court is affirmed.