## YORKSHIRE INDEMNITY CO.
### v.
### GONZALES et al.
### No. 14637.

United States Court of Appeals,
Fifth Circuit.

Feb. 19, 1954.

Rehearing Denied April 1, 1954.

Claude R. Miller, and Strasburger, Price, Kelton, Miller & Martin, Dallas, Tex., for appellant.

Beverly Potthoff, Scarborough, Yates, Scarborough & Black, Abilene, Tex., for appellees.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Fabian Gonzales was fatally injured in an automobile accident while en route from Abilene to Olney, Texas, on the morning of October 22, 1951. Appellees, as his beneficiaries under the Texas Workmen's Compensation Statutes, Art. 8306 et seq., Vernon's Texas Civil Statutes, instituted this action to set aside an award of the Industrial Accident Board denying their claim for compensation. This appeal is prosecuted by appellant, Yorkshire Indemnity Company, from a judgment entered upon a jury verdict awarding death benefits to appellees.

The only substantial question presented for our review is whether the evidence is sufficient to support the findings implicit in the verdict of the jury, (1) that at the time of the accident Gonzales was an employee of Charles Walker, appellant's insured, and (2) that, if he was, he was acting in the course and scope of his employment.

Appellant insists: that plaintiffs failed to sustain their burden as to both of these essentials to a verdict in their favor; that a verdict should have been instructed and judgment entered in its favor; and that the judgment appealed from should be reversed and here rendered for it.

For the reasons hereafter briefly set forth, we agree. Walker was engaged in the plumbing business at Abilene, where his office was located. He employed a crew of Latin American laborers under the supervision of an English speaking one of them named Romero. Both Walker and Romero testified that Romero had no authority to hire and had never hired any laborers, and there was no testimony to the contrary. In addition, Walker testified that while Gonzales had worked for him on a previous occasion, he had not hired him for the journey in question, and he was not working for him at the time of the accident. When Walker had an out of town job and needed laborers to work there, he would send the crew of laborers to the job site under Romero's supervision. On all such occasions, the laborers would be transported in a truck furnished by Walker, and when so riding in the truck furnished for their journey, their time began when they departed from Abilene and they were paid at their regular hourly wage rate for the time consumed in traveling to their destination. To Walker's knowledge, "never have any laborers use (sic) their own automobiles for transportation". On Saturday evening, October 20th, Walker instructed Romero "to prepare the truck and service it and take his regular crew to Olney Monday morning for work." On Sunday afternoon, Gonzales and Romero called on Maza, another employee, at his home, and Romero told the latter to be ready to go to Olney the following morning. Observing that it would probably be cold Monday morning and that he was too old to ride on the truck, Maza asked Romero if he could drive to Olney in his own automobile. Romero replied, "Maza, I don't know about that, I don't know about that, if you want to get in your car, that it all right, and if not, that is all right. I don't know nothing about it." In Romero's presence, Maza asked Gonzales if he would go with him and drive the car. Gonzales was to let him know the next morning. After they left Maza's house, *Romero asked Gonzales whether he had decided to go with Maza and was told that he had not then decided.*

When the truck came by to pick Romero up Monday morning he told the driver to go by Maza's house and find whether Maza had decided to go to Olney in his car. After going by to see Maza the driver reported back to Romero and

told him that Maza was going in his car. Thereafter, Romero and two other employees started toward Olney in the truck. About six miles from Olney on the most direct route from Abilene they came upon Maza's wrecked car. Gonzales, who was under the steering wheel, and Maza were dead. A third employee, Tony Yngllen, whose presence in the automobile is unexplained, was seriously injured. Yngllen's bag containing his "sleeping gear" and clothes was on the truck.

While it is without dispute that when employees such as Gonzales traveled away from Abilene to work in the truck furnished by Walker, they were regarded as in the course of their employment and were paid at their regular hourly rate for the time consumed while en route to the job, there is no evidence whatever that Gonzales would have been paid for the trip time if he had reached Olney, in Maza's car and Walker's uncontradicted evidence is to the contrary.

█ Under the Texas Workmen's Compensation statutes, an injury is not compensable if it occurs while the employee is en route to or from his place of employment over and upon the public streets and highways because he is not regarded as being engaged in the course of his employment while merely traveling to and from work,[1] unless at the time of the injury he is riding in a conveyance furnished for that purpose by his employer or is actually engaged in the performance of a duty required by his contract of employment.

█ It is particularly true that there is no coverage where, as here, the person claiming to be an employee is for his own convenience driving some one else's private car instead, as employees were required by the employer to do, of using the conveyance which the employer, for reasons among others of avoiding the dangers consequent upon careless driving, has provided for the transport of his employees. Antilley v. Jennings, Tex.Civ.App., 183 S.W.2d 982; Texas Indemnity Ins. Co. v. Clark, 125 Tex. 96, 81 S.W.2d 67; Kennedy v. American National Ins. Co., 130 Tex. 155, 107 S.W.2d 364, 112 A.L.R. 916; Viney v. Casualty Reciprocal Exchange, Tex.Civ.App., 82 S.W.2d 1088; London Guarantee & Accident Co. v. Thetford, Tex.Com.App., 292 S.W. 857; and Fountain v. Walker, Tex.Civ.App., 260 S.W.2d 717, 718. The last cited case involves the very accident and the very question at issue here, whether at the time of it Gonzales, who was driving Maza's car at his request and for his convenience, was in the course of his employment and in and about the business of his employer. In that case, the court, citing the many controlling Texas cases and quoting from 5 American Jurisprudence, Par. 392, pp. 728–729, " 'The employer is not liable where the use of the automobile or other vehicle operated by the employee is not expressly or impliedly authorized by the employer, and he exercises no control over its operation'," held as matter of law that Gonzales was not in the course of his employment or engaged in or about his master's business. There the court, dealing with the same accident involved here, said:

"* * * Assuming, without deciding, that Gonzales was an employee of defendant, driving the car on his way to Olney, the place where he was to work, we believe, however, that the evidence is insufficient to sustain the finding of the jury that he was acting in the course of his employment at the time of the collision.

"The evidence is undisputed that the automobile in which Gonzales and the other Mexicans were riding belonged to Faustino Maza. There is no evidence of either expressed or implied authority from Walker

1. Great American Indemnity Co. v. Ortiz, 5 Cir., 193 F.2d 43, 46, and cases cited; Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238; Texas Employers Ins. Ass'n v. Grammar, Tex. Civ.App., 157 S.W.2d 701; Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192.

to Gonzales or the other two Mexicans to use this automobile in connection with their work. There are no facts or circumstances in the record which show or tend to show that the work of Gonzales and the other Mexicans was such as to make the use of an automobile a thing necessarily contemplated by the parties as a part of their contract of employment, or that Walker exercised any control over its operation. * * *

"* * * There is no evidence that Walker had any control over the operation of the automobile. There is no evidence that these men or any other employees of Walker had ever before used this or any other automobile not belonging to Walker in going to and from their work. The evidence is all to the contrary. There is no evidence that Walker either expressly or impliedly required or authorized the use of this car at the time of the collision or at any other time or place with reference to his work. We believe the law is well settled that plaintiff cannot recover and that an instructed verdict for defendant would have been proper. The court did not err in disregarding the answers of the jury and in rendering judgment for defendant. * * *"

 Contrary to the views of the state court, as above announced, as to the same accident, the district judge permitted this case to go to the jury in the absence of evidence which it was plaintiff's burden to furnish and which was not furnished.[2]

 When the plaintiff fails to prove his case by competent evidence, judgment must go for the defendant.[3]

The undisputed testimony in this case, as it was in the state court case against Walker, is that when Walker's employees were transported by him to or from work, it was always in a truck furnished by him, repaired and kept in repair by him, with a driver selected and furnished by him. Walker testified, and nobody disputed him, "Never have any laborers used their own automobiles for transportation." He further testified that on Saturday evening he instructed Romero to prepare the truck and service it and take his regular crew to Olney Monday morning for work. Romero testified, and nobody disputed his testimony, *that he called on Maza, one of the employees, telling him to be ready to go in the truck Walker had furnished and that Maza, observing that it would be cold and he was too old to ride in the truck, asked if he could drive his own car, whereupon Romero replied, "Maza, I don't know about that. If you want to get in your car, that is all right, and if not, that it all right. I don't know nothing about it."* (emphasis supplied)

*In the face of this testimony, and there is nothing else in the record about the matter, the jury has been permitted to find in effect, if not in fact, that Walker furnished the car, which Gonzales was driving and in which Maza was riding, for the use of his employees to come to their work, and that Maza, while riding for his own purposes and pleasure in his own car instead of in Walker's truck which had been fur-*

2. The burden of proof is on the plaintiff in a case to establish his cause of action and his right to recover by a preponderance of evidence. 17 Tex.Jur., p. 317, Sec. 94, and authorities cited in notes thereof. He has the burden of proving the negligence where the proof is essential to make out his case. 17 Tex.Jur. p. 323, Sec. 97. Such burden remains on him throughout the trial. Willow Hole Independent School Dist v. Smith, Tex. Civ.App., 123 S.W.2d 708.

3. In Shapleigh v. United Farms Co., 5 Cir., 100 F.2d 287, 289, Judge McCord for this court said: "Verdicts cannot rest upon guess or conjecture. '* * * a court that is left without knowledge of a fact after exploring to the full every channel of information must needs decide against the litigant who counts upon the fact as an essential of his claim. De non apparentibus et de non existentibus eadem est ratio.' Shapleigh v. Mier, 299 U.S. 468, 57 S.Ct. 261, 264, 81 L.Ed. 355, 113 A.L.R. 253."

*nished for his use, and Gonzales, while driving the car for Maza's convenience and pleasure and not for Walker's, was in the course of his employment and engaged in the furtherance of his employer's business.*

In the opinion in the Walker case, one of the cases cited in support of its view is Antilley v. Jennings, Tex.Civ.App., 183 S.W.2d 982, at page 984. In that case the court, citing many cases, among them three compensation cases,[4] goes on to say:

"These last three cases deal with the proposition that an employee even under the Compensation Statute, Art. 8306, Vernon's Ann.Civ. St., is not to be regarded as being within the 'scope of his employment' while going to and returning from his work and along the public streets or highways. By analogy the principle has application here under the specific facts proved on the trial."

In London Guarantee & Accident Co. v. Thetford, Tex.Com.App., 292 S.W. 857, 859, the court, holding that an employee who chooses to ride in a privately owned automobile instead of a truck provided by an employer, is not in the course of his employment while so riding went on to say:

"The pertinent provisions of section 1 of Article 8309, of Revised Civil Statutes of 1925, provides that the term, 'injury sustained in the course of employment,' as used in the Workmen's Compensation Law, shall include all injuries—'of every kind and character having to do with and originating in the work, business, trade, or profession of the employer while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere.'

"* * * Thetford had not ridden to or from town in a company car. He had ridden to town, and was riding at the time of the accident, in a car owned and controlled by Marshall and not by the company. His presence in the car was a privilege which he had sought and obtained from Marshall, in furtherance of his own purposes and affairs. On the trip he was not under any duty to the oil company, as employee, and was not engaged in or about the furtherance of its affairs or business. He was not subject to any service in behalf of the company, and in fact performed none; nor was the trip to or from town made in contemplation of the performance (in course of the trip) of any service for the company. If Thetford had made the trip in one of the company's cars in pursuance of the privilege given by assistant superintendent Shanahan, thereby subjecting himself to being called on, during the trip, to aid in the loading or the transportation of tools or supplies for the company, a different question might have been presented. * * *"

What was said by this court, through Judge McCord, in Owen v. Hardware Mutual Casualty Co., 158 F.2d 471, 472:

"Neither appellant's cited cases nor any we have found warrant a finding of coverage on facts such as these. Workmen's compensation laws are, and should be, given liberal construction, and the Texas courts have given the Texas Workmen's Compensation Law liberal and reasonable construction to allow coverage in meritorious cases. Maryland Casualty Co. v. Levine, 5 Cir., 67 F.2d 816. However, liberality of construction cannot warrant coverage in a situation such as

4. London Guarantee & Accident Co. v. Thetford, Tex.Com.App., 292 S.W. 857; United States Fidelity & Guaranty Co. v. Flanagan, 134 Tex. 374, 136 S.W.2d 210; Viney v. Casualty Reciprocal Exchange, Tex.Civ.App., 82 S.W.2d 1088.

is here present where the employee deviated completely from the master's business and then as a consequence of his own deviation violated the master's specific instructions against driving at night when driving hazards are great. To allow recovery under these facts would be to give the Compensation Law a strained, illogical, and unreasonable construction. It would be a stretching of coverage beyond the breaking point to include a fact situation not within the contemplation of the statute."

has, we think, precise and peculiar application here. The motion to direct a verdict for defendant should have been granted. The judgment is, therefore, reversed and the cause is remanded with directions to enter judgment for defendant.

Reversed with directions.

RUSSELL, Circuit Judge, dissents.

Rehearing denied; RUSSELL, Circuit Judge, dissenting.